161  327
167  201

LUCIEN BROADWELL

*v.*

THE INTER-OCEAN HOMESTEAD AND LOAN ASSOCIATION.

*Filed at Ottawa May 12, 1896.*

1. BUILDING AND LOAN ASSOCIATIONS—*when Auditor need not give second notice of insolvency.* The Auditor need not give a second notice and an additional sixty days to an association to correct its illegal practices and put itself in a solvent condition, under section 17 of the act of 1893, (Laws of 1893, p. 85,) where a report showing compliance with the Auditor's demands, made in answer to a former notice and with which the Auditor had expressed himself satisfied, was found to be false and made to deceive.

2. SAME—*supervisory power of Auditor over.* Under the act of 1893 (Laws of 1893, p. 83,) the Auditor of Public Accounts has full supervisory power over homestead and loan associations, and may alone determine when assets of such association are sufficient and when its illegal practices have been corrected.

3. SAME—*when stockholders may be represented by proxy.* Stockholders of a building and loan association may legally be represented by proxy at a meeting at which action is taken to increase the assets, in pursuance of the Auditor's notice.

4. SAME—*power of association to "make its assets sufficient."* An association may "make its assets sufficient," in compliance with the Auditor's notice, (Laws of 1893, p. 85, sec. 17,) by an assessment charged on the books *pro rata* against the several amounts paid on stock by its shareholders.

5. SAME—*jurisdiction of court under bill by stockholder—intervention by Attorney General.* Jurisdiction over an association, acquired under a petition by a shareholder therein, followed by a receiver, is not taken away by an intervening petition by the Attorney General, on the relation of the Auditor, praying for a new receiver and seeking to close up the business.

6. APPEALS AND ERRORS—*who may complain of decree permitting resumption of business.* The Attorney General cannot alone complain of a decree declaring an association which has been in a receiver's hands, solvent, turning its assets back, and authorizing it to resume business upon a showing that it has been made solvent, where neither the Auditor nor any one interested in the association is complaining.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

Appellee is a homestead and loan association, organized under the statute of this State. In January, 1894, the Auditor of Public Accounts caused an examination of its affairs to be made, as provided in section 16 of the amendatory act of 1893. (Laws of 1893, p. 83.) The result being unsatisfactory, on the 29th of that month he notified the president and secretary that the association was conducting its business in an illegal and unsafe manner, and had diverted a large amount of its funds to the payment of officers' salaries, in violation of law; that its expense fund had been overdrawn to the amount of $11,155.34; that its expenses largely exceeded its income, and that its assets were insufficient for the payment of its legal liabilities or the continuance of its business, and notifying them that unless they should, within sixty days from that date, "correct such illegal and unsafe practices and make such assets sufficient to justify the continuance of business," he would report the association to the Attorney General, to be by him proceeded against as provided by statute. Subsequently the association informed him that his requirements had been complied with, and he thereupon caused an examination to be made, and on March 7, 1894, returned a communication expressing his satisfaction with the then condition of affairs of the association. About the 15th of December following, a third examination by him was completed, by which the association was found to be insolvent. On the 21st day of that month, Lucien Broadwell, one of its shareholders, filed his bill in the circuit court of Cook county alleging its insolvency, and asking the appointment of a receiver to convert its assets into money and distribute the same among the stockholders. On the same day a receiver was duly appointed, who gave bond and took charge of the corporation.

On January 4, 1895, the Attorney General was allowed to file an intervening petition in that case, in the name of the People, on the relation of the Auditor,

asking a rule on the association to show cause why its business should not be closed up, and praying for the appointment of a new receiver, for an injunction, etc. On the 9th of that month the association filed its answer. The petition sets up the several examinations by the Auditor above referred to, and avers, in substance, that the response to his notice of January 29, 1894, to the effect that the affairs of the association had been made to conform to his directions, was untrue, and that its officers and directors had not, in fact, complied with said notice and did not restore the impaired assets in good faith, but only pretended to do so for the temporary purpose of making a favorable report to him. It then alleges that upon the examination last referred to it was found that the liabilities of the association exceeded its assets $9467.74, that its expenses continued to largely exceed its income, and that it is insolvent and its financial condition not such as to justify a continuance of its business. The prayer is that the receiver appointed under the original bill be required to turn over the assets to a receiver appointed under that petition, and that the affairs of the corporation be wound up by such new receiver under the directions of the court.

The answer denies that the association was insolvent on January 29, 1894, but avers that on receiving the notice of that date from the Auditor the alleged shortage "was made good, under protest, because said officers and directors believed at said time that the said association was solvent, and that the officers and directors were not and could not be required, under the law, to make up the alleged deficiency, but said shortage was made good by cash or other available assets; that immediately after said shortage was made good a communication was forwarded to the Auditor, to the effect that the association had complied strictly with all the requirements mentioned in the communication last received from his office." It then sets up the re-examination by the

Auditor, and his letter of March 7, expressing his satisfaction with the result, and avers that no further communication from him on the subject has been received. It admits the further examination in November and December, but avers that it received no communication as to the result thereof. It then sets up section 17 of the act of 1893, and alleges, "the Attorney General has no standing in this court, because the said Auditor has not, as yet, communicated to this respondent the notice required by section 17 of said act above mentioned." It alleges that granting the prayer of the petition would work injury and hardship to the shareholders, and that the receiver then acting could manage the affairs, collect the assets, and distribute the same in a more economical manner than one appointed upon the intervening petition.

On April 29 a committee appointed by the stockholders presented a report, accompanied by a petition, stating that in accordance with the suggestion of the court a meeting of the shareholders had been held on the 28th of March, at which a resolution was adopted, as follows:

"*Resolved*, That we, stockholders of the Inter-Ocean Homestead and Loan Association, hereby scale down our stock or credits *pro rata* in said association, such percentage or sum to be fixed by the court as may be necessary to pay all costs and charges of the receivership, all preferred claims, and to meet any deficiency between the assets and liabilities of said association and to pay all costs and expenses incurred in scaling down, in order that said association may become solvent and the receiver discharged. And we, stockholders of the Inter-Ocean Homestead and Loan Association voting for the above resolution, hereby tender to the court our credits to be scaled down, and agree that such charges may be made on the books of the association against our shares or credits, *pro rata*, as may be necessary to pay all costs and charges of the receivership, and all preferred claims, and to meet any deficiency between the assets and liabilities of said association, and to pay all costs and expenses incurred in scaling down, and hereby authorize any person appointed by said circuit court, or any person agreeable to the Auditor of State, to make the necessary charges against our stock or credits upon the books of said association."

The report further shows that more than a majority of the stock, representing three-fourths of the liabilities of the association, voted for the resolution, and that some of the votes were by proxies; that no opposition or objection was made by any shareholder, and that those not represented at the meeting were holders of shares upon which but small sums had been paid. It then proceeds to state the financial condition of the association, and asks the court to fix the sum to be assessed against the credits of the various stockholders represented at said meeting in person or by proxy, *pro rata*, sufficient to make the association solvent, pay all costs and charges of the receivership, and all claims and demands incidental to scaling down, etc.

On April 30 a decree was entered upon the above petition, reciting that it appears from a recent supplemental examination made by the Auditor of the assets and liabilities of the association that a deficiency exists between the assets and liabilities of $43,623.67, and that the shareholders have petitioned that an assessment be made against the stock held by those represented at said meeting, and ordering that in accordance therewith sixty per cent, or so much thereof as may be found necessary, be assessed against the shares of stockholders consenting thereto, etc., and ordering that the final report of the receiver filed be approved and the property and effects of the association turned over to the Auditor and the receiver discharged, and that the Auditor spread the assessment levied, as stated, upon the books of the association, and also decreeing as follows: "And it is further ordered and decreed, and said association is hereby declared to be solvent, and permission is hereby given it to resume business."

At a special meeting of the board of directors, held on May 13, 1895, the minute of the proceedings recites: "Whereas, David Gore, Auditor of Public Accounts, * * * upon a thorough and final examination of the

assets and liabilities of the association, reports that in order to make said association solvent an assessment of fifty per cent would have to be made upon all the stock of the association, *pro rata*, in order that said association may resume business," it was resolved that an assessment of fifty per cent be spread upon the books of the association by the official examiner of the Auditor, as ordered by the court, "said assessment to be effectual by charging off upon the books of the company fifty per cent of the amount paid in by each shareholder of the association upon his stock."

On May 19 William Fries, appointed by the Auditor to represent him, reported to the court the financial condition of the association, and that, in accordance with the resolution of the board of directors, on May 13 he had spread an assessment of fifty per cent upon all the stock "by charging off upon the books fifty per cent of the amounts paid in by each stockholder upon his stock, and said assessment being spread with the consent and under the direction of the court." He further reported the association then in a solvent condition, and that its assets were equal to or exceeded its liabilities. Thereupon the court entered its final decree, reciting that the cause coming on to be heard on the report of the Auditor, by William Fries, his representative, and it appearing from the testimony and the report that the association was then solvent, the action of the Auditor in spreading the assessment be approved, and that all the assets of the association in his hands be turned over to the secretary of said association, and that the action of the board of directors in levying said assessment be declared to be legal and binding upon all the stockholders in the association, dismissing the original bill and declaring the association solvent and authorized to resume business, and modifying the decree of April 30, 1895, so far as the assessment upon stockholders was concerned. From this decree the Attorney General alone prayed an appeal,

which was allowed, and thirty days given in which to file a certificate of evidence.

MAURICE T. MOLONEY, Attorney General, (T. J. SCO-FIELD, M. L. NEWELL, SAMUEL RICHOLSON and GEORGE E. BACON, of counsel,) for appellant.

B. W. SHERMAN, for appellee the Inter-Ocean Homestead and Loan Association.

AMBROSE RISDON, for appellees the petitioning stockholders.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Neither the complainant in the orignal bill nor any other shareholder or officer of the association has made complaint of the action of the court below or its final decree, therefore the only assignment of error material to be considered on this appeal is, "the court erred in refusing to forfeit the charter of the defendant corporation."

The petition by the Attorney General is based on section 17 of the act of 1893, (Laws of 1893, p. 85,) which provides: "And whenever it shall appear to said Auditor that the assets of any such association incorporated or doing business in this State are insufficient to justify the continuance of business of such association, or that it is conducting its business, in whole or in part, contrary to law or in an unsafe manner, he shall communicate the fact by mail, addressed to the president and secretary of such association. The mailing of such notice shall be deemed sufficient evidence and notice. Such association shall be allowed sixty days within which to make the assets sufficient or correct such illegal practices, and in case such assets are not made sufficient or such illegal practices corrected within the time herein provided, then the Auditor shall report the same to the Attorney General, whose duty it shall then become to apply to the circuit court of the county in which the principal office of

such association may be located, or to any of the judges of said court, in the name of the People of this State, on the relation of said Auditor, for an order requiring such association to show cause why the business of such association shall not be closed or for an injunction restraining such association from doing further business, which application may be made either in term time or in vacation, in the manner now provided for obtaining injunction, except no bond should be required from said Auditor in obtaining such injunction. The court shall thereupon proceed to hear the allegations and proofs of the respective parties, either in open court or by reference to a master in chancery; and in case it shall appear to the satisfaction of said court that the assets and funds of said association are not sufficient, as aforesaid, or that such association has been conducting its business, in whole or in part, contrary to law, the court may decree a dissolution of said association and the distribution of the assets, and may appoint a receiver of such association, with full power to do all acts necessary to close the affairs of such association and for the proper distribution of its assets."

It is insisted by counsel for appellee that the petition on the relation of the Auditor was improperly filed, because no notice was given by him of any irregularity in the affairs of the association after his examination of November, 1894. We think, in view of the allegations of the petition that the report made in answer to the notice which he did give was false and made to deceive him, and that the liabilities of the association were largely in excess of its assets, (neither of which allegations is denied by the answer,) the Auditor was justified in treating the report of the compliance with his requirements, and his answer thereto, as if not made. The petition alleges that at the time it was filed this corporation was insolvent, and, as we have said, the answer does not deny it. The action of the shareholders, as well as that

of the board of directors, concedes the fact. If, therefore, the case should be decided on the facts as they existed when the petition was filed, there would be no question but that it would be the duty of the court to sustain the petition, and order the dissolution and the winding up of the affairs of the association. It seems, however, that section 17, as well as the two preceding sections of the act of 1893, *supra,* clearly manifests an intention upon the part of the legislature to give the Auditor of Public Accounts supervisory power over homestead loan associations in this State. Any action brought under section 17 to dissolve such an association must be on his relation. He is the public officer designated by the law to determine when the assets are insufficient to justify the continuance of business or when it is conducting its business contrary to law or in an unsafe manner, and he alone is authorized to decide whether or not the assets have been made sufficient or any illegal practices corrected within the sixty days allowed for that purpose after notice. The theory upon which the court below proceeded manifestly was that the Auditor was clothed with the power of determining these questions, and the association through its shareholders, and subsequently by the action of its board of directors, having made its assets equal to its liabilities, to his satisfaction, the decree refusing to dissolve it and re-investing its officers with its assets with authority to proceed with its business was authorized.

We do not understand the Attorney General to question this right provided the assets were increased in a legal manner, but his contention is, that the proceedings by the stockholders and the board of directors were illegal and irregular, first, because stockholders could not be legally represented by proxy at the meeting at which it was resolved to increase the assets, and second, that neither the stockholders nor the board of directors could legally increase the assets so as to make them equal to the liabilities by spreading assessments against

the shareholders.   We are not prepared to agree with either of these contentions, especially the latter, which, in our opinion, goes to the merits of the case.   Section 17, *supra*, by providing that the association "shall be allowed sixty days within which to make the assets sufficient," clearly contemplates the right of the board of directors to increase it assets, and we are unable to perceive how that could be done in any other way than by making assessments against its shareholders.   Nor can we see how the shareholder would be injured by making that assessment available by charging upon the books of the association the per cent necessary to make the association solvent, against the amount each shareholder paid in upon his stock, as was done in this case, as shown by the Auditor's report of May 17, 1895.

But even if the contention of the Attorney General that the action of the shareholders and board of directors was not in strict conformance with the law be correct, still the question remains, who can complain of that action?  As we have before said, no one interested in the association is complaining or making any objection.   The Auditor, charged with the official duty of supervising the association, has by his affirmative act and report approved the action by which its solvency has been brought about.  He reports to the court every fact necessary, under the provisions of the statute, to entitle it to resume business under its organization, and we are unable to see how the public are in any way interested in preventing it from so doing.  Again, the court had jurisdiction of this corporation under the original bill, and was, by its receiver appointed in that case, in possession and control of its business and assets.   That jurisdiction was neither taken away nor interfered with by the intervening petition. If, through the subsequent action of the shareholders or board of directors, the court became satisfied that the errors and irregularities in the management of its business had been corrected and its assets so increased as

to render it solvent, there is no reason why it might not, in the exercise of a sound legal discretion, order its re-ceiver to re-transfer the business and assets back to its board of directors and permit it to resume business in conformity with its charter and the statute.

The object of the amendatory act of 1893 is undoubt-edly a wholesome one, intended to prevent the abuse of the privileges of such associations under the law, and to prevent their doing business after their assets have become insufficient to justify them in doing so. When irregularities of this kind are discovered and proceed-ings begun to dissolve the corporation, if the court becomes satisfied that they have in good faith been corrected, it would seem that the interest both of the shareholder and the public requires that they should be permitted to continue their business. Certainly it can not be urged that the shareholders of this organization would have been benefited by a dissolution and winding up of its affairs rather than to permit it, by the method adopted, to put itself in a condition to continue business.

The decree of the circuit court will be affirmed.

*Decree affirmed.*