THE CONTINENTAL INVESTMENT AND LOAN SOCIETY

*v.*

THE PEOPLE *ex rel.* Gore, Auditor.

*Filed at Ottawa June 8, 1897.*

1. LOAN ASSOCIATIONS—*association may make its assets sufficient by assessment charged against stock.*  A loan association, in compliance with the Auditor's notice under the statute, (Laws of 1893, p. 85, sec. 17,) may make its assets sufficient by an assessment charged on its books *pro rata* against the amounts paid in by its members on stock. (*Broadwell* v. *Inter-Ocean Homestead Ass.* 161 Ill. 327, followed.)

2. SAME—*when decree appointing receiver will not be sustained.*  A decree dissolving a loan association and appointing a receiver will not be sustained on appeal, where it appears that within sixty days after receiving the Auditor's notice, the irregular practices complained of were corrected and the assets of the association were "made sufficient."

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This is a bill, filed on June 13, 1894, by the People, on the relation of the Auditor of Public Accounts by the Attorney General against the appellant, the Continental Investment and Loan Society, under section 17 of the Building, Loan and Homestead Association act, as said section was amended in 1893.    The bill prays, that the society be enjoined from doing business and be required

to show cause why it should not be closed, and that a receiver be appointed to take possession of its assets; that its officers be required to turn over all its property to the receiver to be appointed by the court; and that the defendant society be dissolved and its franchise forfeited. The society answered the bill, and in its answer denied the material charges made against it in the bill.

The cause was referred to a master in chancery, who took testimony and made a report, recommending that the prayer of the bill be granted. Objections were filed to the report of the master which were overruled by him. Exceptions were also filed to said report by the society, which exceptions were overruled by the court. On March 18, 1896, the court, in order to be more fully advised in the premises, directed that one Aaron M. McKay be appointed to investigate the affairs of the association and report to the court his finding as to its condition. McKay made a report, which was acted upon by the court in making its final decree. It appears that McKay was not sworn, and no order was entered providing for his being sworn, and that he fixed no time or place for hearing of the parties, and heard no evidence, and acted without notice to any one.

On April 8, 1896, the court entered a final decree, finding that the assets of the association were insufficient to justify a continuance of the business by it, and decreeing, that it should be dissolved, and that its charter and all corporate rights existing thereunder should be annulled. In this final decree, it was further ordered by the court, that one William Fogerty be appointed receiver of the property of the association with power to receive and collect all the outstanding debts, and to collect and receipt for the assets of the corporation. It was also therein further decreed, that the officers of the association should deliver to said receiver all books of account and securities belonging to the association. The present appeal is prayed from the decree so entered as aforesaid.

DEFREES, BRACE & RITTER, (THOMAS A. MORAN, of counsel,) for appellant.

MAURICE T. MOLONEY, Attorney General, (T. J. SCOFIELD and M. L. NEWELL, of counsel,) for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The proceeding, in which the decree herein sought to be reviewed was entered, was begun under section 17 of the act, authorizing the organization of building, loan and homestead associations, as the section was amended in 1893. (Laws of 1893, p. 83). Many contentions are made by appellant, such as that the act in question is unconstitutional; and that the notice required by section 17 was not given to appellant. But in the view, which we take of the case, we deem it unnecessary to consider or discuss these questions.

Section 17 provides that, "Whenever it shall appear to said Auditor that the assets of any such association incorporated or doing business in this State are insufficient to justify the continuance of business of such association, or that it is conducting its business in whole or in part contrary to law, or in an unsafe manner, he shall communicate the fact by mail, addressed to the president and secretary of such association; the mailing of such notice shall be deemed sufficient evidence and notice. Such association shall be allowed sixty days within which to make the assets sufficient or correct such illegal practices; and in case such assets are not made sufficient or such illegal practices corrected within the time herein provided, then the Auditor shall report the same to the Attorney General, whose duty it shall then become to apply to the circuit court of the county in which the principal office of such association may be located, or to any of the judges of said court,  *  *  *  for an order requiring such association to show cause why the

business of such association shall not be closed;   *   *   *
the court shall thereupon proceed to hear the allegations
and proofs of the respective parties either in open court
or by reference to a master in chancery; and in case it
shall appear to the satisfaction of said court that the
assets and funds of said association are not sufficient as
aforesaid, or that such association has been conducting
its business, in whole or in part, contrary to law, the
court may decree a dissolution of said association and
the distribution of the assets, and may appoint a re-
ceiver," etc.

On March 12, 1894, the Auditor prepared and mailed
to the appellant a letter, setting forth his views in rela-
tion to the condition of the appellant's affairs, and stat-
ing what he required the appellant to do in order to
justify a continuance of its business. This letter was re-
ceived by the secretary of appellant, and seems to have
been agreed upon by the Auditor and by the officers of
the appellant association as such a notice as was deemed
essential by the terms of section 17. Whether, therefore,
appellant did or did not receive the formal notice pro-
vided for by the act before March 12, 1894, the evidence
shows that it did receive such notice on that day; and
the letter of that date will be treated as sufficient and
proper notice.

As we read the decree of the circuit court, it does not
find that the appellant was conducting its business, in
whole or in part, contrary to law, or in an unsafe man-
ner. By the terms of the decree, the order dissolving
the association and appointing a receiver of its assets
is based wholly upon the finding, that such assets were
insufficient to justify a continuance of business by the
association. The Auditor did complain in the letter of
March 12, that the association had been guilty of certain
practices charged to be illegal and unsafe. Briefly sum-
marized, these practices were as follows: (1) the accu-
mulation of funds for the payment of expenses; (2) the

making of a contract by which the securities of the association were removed from its control and expense incurred; (3) the expenditure of large and extravagant sums for expenses in excess of the earnings; (4) the failure to keep books of account in a proper manner and condition, and to cause such books to faithfully represent the condition of the society, its receipts and disbursements; and (5) making loans upon insufficient and inadequate security.    All the matters thus complained of were remedied before these proceedings were commenced.

The charge, that appellant accumulated a fund for the payment of expenses, and that the law only authorized the accumulation of a fund for the purpose of making loans to members, refers to the provision of a by-law of the appellant, setting aside eight cents per share per month, out of the installments paid in, as an expense fund.    This by-law was objected to by the Auditor as invalid.    Whether it was invalid or not, an amendment to it remedying the feature objected to was prepared and submitted to the Auditor for his approval before April 13, 1894; and the amendment was adopted at an annual meeting of the stockholders held on June 11, 1894, two days before the filing of the present bill.    Shortly after March 12, 1894, the contracts which were objected to were canceled and abrogated.    The expenditures which were objected to by the Auditor were decreased; and expenses, which, prior to January 1, 1894, amounted to $1800.00 or $2000.00 per month, were reduced after that month to about $300.00 per month.    It is found by the master in his report, that between January 12, 1894, and March 1, 1895, the affairs of the association were fairly, judiciously and inexpensively administered, and that no officer except the secretary received a salary.    A change satisfactory to one of the examiners appointed by the Auditor was made in the manner of keeping the books; and the method of book-keeping steadily improved after March, 1894, and from that time the books were satisfac-

tory. It seems to be a question, whether any loans were made upon real estate subject to prior incumbrances, but it is quite clear that no such loans were made after January, 1894. The charge, that loans had been made upon insufficient and inadequate security, would appear to be unsupported by the proof, as the master in his report makes no finding upon that subject.

Inasmuch as all the suggestions, made by the Auditor for the correction of what he regarded as illegal or unsafe methods of conducting the business of the association, were carried out and fully complied with, and inasmuch as the decree makes no finding to the effect that such suggestions were not carried out and complied with, it only remains to consider whether or not the decree is correct in finding that the assets of the association were insufficient to justify the continuance of its business.

The report of the examiner, appointed by the Auditor to ascertain the financial condition of the appellant, stated that there was an excess of the liabilities over the assets to the amount of $34,800.30. This shortage of about $35,000.00 consisted mainly of an expense fund, accumulated under the by-law already referred to by setting aside eight cents per share per month out of the installments paid in, and also of an amount made up of premiums deducted from the loans of borrowing members. If these two items relating to expenses and premiums be deducted from the sum of $35,000.00, the amount of the shortage would be less than $5000.00. We do not deem it necessary to discuss the question whether, under the provisions of the act and of the amendments to the act, the stockholders were prohibited from pledging, by a by-law, a part of their contributions to the association for the payment of expenses. Whether the by-law was valid or not, it was amended, as already stated, at the suggestion of the Auditor. Nor do we deem it necessary to discuss whether it was proper to deduct a premium from the face of the loans, as was done in this case. It

is contended by the appellant, that the shortage, so far as it consisted of this expense fund and this premium fund, was not a real liability, while the opposite contention is made by the appellee.  It is sufficient to say, that, under the terms of section 17, the directors of appellant were allowed sixty days within which to make the assets sufficient by wiping out the shortage.  We are of the opinion, that appellant took such steps as did make its assets sufficient.

On March 11, 1894, a committee of appellant's directors visited the Auditor in person and discussed with him the question of making good the alleged deficiency, and received from him written instructions as to the proper mode of making it good.  These instructions, as we read the evidence, were complied with.  By a process, which it is not necessary here to state, the secretary arrived at an amount, which was twenty cents on the dollar of the amount paid in as installments, making the then value of each member's stock eighty per cent of the amount paid in by him prior to January 11, 1894; this difference of twenty per cent was charged off to each member by an entry in his account on the stock ledger, and subsequently the total of the amounts so charged off was carried into the general ledger to the credit of the installment account.  The effect of these entries was to reduce, to the extent of twenty per cent of the previous payments, the amount carried to the credit of the several members, and to reduce to that extent the apparent liabilities.  In other words, the association proceeded to distribute the $35,000.00 against its shares of stock then outstanding by charging off on the books of the company each share's proportion of said amount.  This method of increasing the assets or wiping out the shortage was endorsed by this court in the case of *Broadwell* v. *Inter-Ocean Ass.* 161 Ill. 327;  there, the stockholders of the association held a meeting, at which about three-fourths of the stock was represented either in person or by proxy, and

at which a resolution was adopted, that the stock should be scaled down by charging against each member his *pro rata* share of such sum as might be necessary to meet any deficiency between the assets and liabilities; and in that case we said (p. 336): "Section 17, *supra*, by providing that the association 'shall be allowed sixty days within which to make the assets sufficient,' clearly contemplates the right of the board of directors to increase its assets, and we are unable to perceive how that could be done in any other way than by making assessments against its shareholders. Nor can we see how the shareholder would be injured by making that assessment available by charging upon the books of the association the per cent necessary to make the association solvent against the amount each shareholder paid in upon his stock."

After the proceedings, which resulted in the charging off of the shortage in the manner thus stated, the board of directors directed the secretary to call a meeting of the stockholders for the purpose of determining whether this charge should be approved, and whether the association should continue in business or pass into the hands of a receiver. This meeting of the stockholders was held on May 1, 1894, within the sixty days, and a resolution was there adopted, which provided "that the secretary be and is hereby instructed to charge off to each member of this company his *pro rata* share of the shortage as found by the Auditor on all stock in force at that time according to the holdings of stock in the company of each member, and that the company continue in business." Ten thousand eight hundred and twenty-six shares voted for this resolution, and six hundred and forty-one shares against it.

It is contended, however, by appellee, that the adoption of this resolution on May 1, 1894, was a void act, because many of the shares voting in the affirmative were voted by proxy. This same objection was made in *Broad-*

*well* v. *Inter-Ocean Ass. supra.* In the latter case, it was contended that the stockholders could not be legally represented by proxies at a meeting at which it was resolved to increase the assets; and we there said that we were not prepared to agree with that contention. Whether or not it was proper for the secretary to vote the shares under the proxies held by him in the manner in which it was done, and whether or not the *Broadwell case* can be construed as holding such voting by proxies to be valid, is immaterial in this case, because the proof shows, that the charging off of the shortage was ratified and confirmed in one form or another by practically all the stockholders. We do not deem it necessary to enter into a detailed statement of the manner, in which such ratification and confirmation by the stockholders took place. The stockholders, however, took no steps to attack the passage of the resolution by the meeting held on May 1, and, this being so, it is difficult to understand who has a right to complain of that action. (*Broadwell* v. *Inter-Ocean Ass. supra*).

It thus appears that, before the decree in this case was entered, and within the time limited by section 17, the errors and irregularities in the management of the business of appellant of which the Auditor complained had been corrected, and its assets had been so increased as to make them sufficient to justify the continuance of its business. We are, therefore, brought to the conclusion, that the circuit court erred in rendering a decree dissolving the appellant corporation and appointing a receiver to take possession of its assets. Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court with directions to order its receiver to re-transfer the business and assets back to the board of directors of the association, and to permit it to resume business in conformity with its charter and the statute.            *Reversed and remanded.*