VICTOR W. REITZ, Respondent, v. JAMES HAY-
WARD, Assignee, Appellant.

St. Louis Court of Appeals, March 17, 1903.

1. **Building and Loan Association:** PAYMENT ON LOAN BY
CREDITS: WITHDRAWAL. Revised Statutes 1899, section 1370,
providing that stock in a building and loan association pledged as
security for a loan, may not be withdrawn, does not forbid the
withdrawal of such stock and credit thereof on payment of a loan,
as section 1368, Revised Statutes 1899, expressly provides for the
credit of the withdrawal value of shares, on the payment of a loan.

2. ———: ———: PLEDGED STOCK SURRENDERED: NOTICE
WAIVED. Where a building and loan association raised no objec-
tion to the repayment of a loan and surrender of pledged stock on
the ground that the notice by section 1368, Revised Statutes 1899,
was not given, but disputed merely the amount owed, notice was
waived.

3. ———: WITHDRAWAL OF SHAREHOLDER, NOTICE
THEREOF: INSOLVENCY: NO PREFERENCE TO DISTRIBU-
TION. Notice by a shareholder of withdrawal from a building and
loan association gives him no right to a preference in the distribu-
tion of the company's assets, when the company was insolvent be-
fore withdrawal was accomplished, although such fact was unknown
to the shareholder.

4. ———: ACTION TO WITHDRAW: RIGHT TO CREDIT ON
LOAN NOTWITHSTANDING INSOLVENCY. Where a member of
a building and loan association institutes his action to withdraw
from the association, while it is still a going concern, his right to be
credited on his loan with the withdrawal value of his pledged stock
and dividends previously declared can not be affected by the sub-
sequent insolvency of the association and assignment of its assets.

5. ———: ———: ACTUAL VALUE OF SHARES TO BE CRED-
ITED. Under section 1368, Revised Statutes 1899, providing that
a withdrawing member of a building and loan association, on repay-
ment of his loan shall be allowed credit if he so desires for the
withdrawal value of the shares pledged, the credit to be allowed
on the shares is to be computed according to their value.

6. ———: ———: ———: INTEREST CHARGED IN FULL. A
withdrawing shareholder in a building and loan association, whose
loan was $500 subject to the reduction of $10, attorney's fees and

Reitz v. Hayward.

$16.50 premium, should be charged interest on the full $500, since, although the premium was illegal, it was credited on the loan.

7. ———:———. Tender of settlement of a loan, advanced by a building and loan association, relieves the further payment of interest.

8. ———: ———: INTEREST ON INTEREST NOT ALLOWED. It was error for the courts, in computing the amount due a building and loan association on the withdrawal of a member, to allow said member interest on interest rightly paid by him, on the theory that it was usurious.

9. ———: CREDITED BY DIVIDENDS. A withdrawing shareholder in a building and loan association is entitled to be credited on his loan with dividends earned previous to the association's insolvency.

10. ———: WITHDRAWING SHAREHOLDER: NO NOTICE, SET-OFF PROPERLY REFUSED. A set-off in favor of a withdrawing shareholder in a building and loan association on account·of stock assigned to him by another member subsequent to the loan in settlement, no notice of the withdrawal of which had ever been given by the withdrawing member as required by section 1368, Revised Statutes 1899, was properly refused.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

MODIFIED AND AFFIRMED.

*Thomas M.* and *Cyrus H. Jones* for appellant.

(1) The rule that a borrowing stockholder will not be permitted to recoup his indebtedness by the amount of his payments on shares· of stock issued to him, is the universal law governing the administration of the affairs of insolvent building and loan associations. U. S. Building & Loan Ass'n v. Reed, 62 S. W. 1020; U. S. Building & Loan Ass'n v. Brunner, 64 S. W. 996; Farmer's Savings and Building Ass'n v. Ferguson, 63 S. W. 997; Williamson v. Globe Building & Loan Company, 64 S. W. 298; Columbia Finance & Trust Company v. Schwartz, 64 S. W. 743; U. S. Building & Loan Ass'n v. Green, 64 S. W. 962; U. S. Building & Loan Ass'n v. Rowland, 60 S. W. 707; Globe

Building & Loan Company v. Stephens, 60 S. W. 723. (2) A building and loan association is insolvent when at receipt of a notice of withdrawal by a member, its liabilities to its shareholders are in excess of the value of its assets. Thompson on Building & Loan Associations, p. 586; Chapman v. Young, 65 Ill. App. 131.

*J. B. Harrison* for respondent.

(1) Section 1337 also provides that the withdrawal value may be regulated according to the by-laws and amount stated in the certificate. Bertche v. Loan and Investment Ass'n, 147 Mo. 343, establishes the rule for an accounting of this character and reviews the by-laws and orders made by the loan association, and on page 363 the court in rendering the opinion in said cause says, "in the case of Latimer v. Equitable Loan and Investment Company recently decided by the United States Circuit Court for the western district of Missouri, and reported in 81 Fed. 776, the question arose whether the statute of Missouri permitting a member to withdraw at any time was to be treated as forming a necessary part of a contract, or whether the accepting of a certificate with a clause curtailing the right of withdrawal to a period of less than one hundred months from its date is binding upon a stockholder, and the court held that the statutory right of ending the stockholder's relation to the association by withdrawal was a fundamental right evidencing a public policy which can not be waived or contracted away by any one or more members of the association and that the plaintiff in that case, having given requisite notice, was entitled to recover the amount paid on his stock, notwithstanding the terms of his certificate postponing the exercise of this right until an expired term of one hundred months shall have elapsed." The facts as disclosed by the evidence shows conclusively that this loan was not made upon any competitive bid, however, and that the loan

was an usurious loan from the rules established by the courts in this State. Schell v. Equitable Loan and Investment Ass'n, 150 Mo. 103.

GOODE, J.—Victor Reitz, the respondent, was a stockholder and borrower in the Aetna Loan Company, with which company he negotiated a loan of five hundred dollars, March 9, 1894, and gave his note for said sum on said date, secured by deed of trust on a property he owned in the town of St. James, Missouri. The note provided that he should pay the company ten years after date, or sooner, said sum with interest at the rate of six per cent per annum, payable monthly on the fifth day of each month, in installments of two dollars and fifty cents.

Reitz owned two shares of stock in the Aetna company of the par value of five hundred dollars, which he had taken out in July, 1893, and these were mortgaged along with his real estate to secure the loan. Besides the note for five hundred dollars, he gave a note for three hundred and thirty-three dollars, secured by deed of trust on the same property covered by the first deed, payable in monthly installments of three dollars each, as premium bid for the loan.

The company deducted from the amount of the loan ten dollars for an attorney's examining fee, and $16.50 dues and premium for the months of March, April and May, and paid Reitz $473.50 in June when the loan was concluded.

Fred Steen owned a share of stock in the Aetna company of the par value of five hundred dollars, issued to him in June, 1893, which he assigned to Reitz April 23, 1898, the transfer being regularly made on the books of the company. Reitz paid dues, interest and premium on the loan and stock until November, 1898, as well as we can tell from the record. About that time he demanded a settlement with the company, tendering his stock and offering to take for it what he

had paid in; but the company demanded $105 more, which he refused to pay. On account of his refusal to make further payments the company advertised his property for sale under the first deed of trust. The plaintiff brought the present suit to enjoin the sale and for an accounting on December 19, 1899.

The court struck the following balance:

Reitz, debit—

| | |
|---|---|
| Amount cash received on loan..........$ 473 50 | |
| Interest thereon ...................... | 127 71 |
| Attorney's fee ........................ | 10 00 |

Total ............. .............$ 611 21

Reitz, credit—

| | | |
|---|---|---|
| Stock ............ ..........$ 140 00 | | |
| Interest on same ............ | 18 90 | |
| Premiums paid on loan....... | 168 00 | |
| Interest on same ............ | 30 14 | |
| Dividend on stock ........... | 60 21 | |
| Amount due on account of installments paid on stock.... | 153 60 | |

Total .......... ........$ 570 85 $ 570 85

Balance due company ................$ 40 36

Judgment was entered for the company for that sum and that on payment of it by Reitz the deed of trust be satisfied.

The decree recites that the premiums paid on the loan were one hundred and ninety-eight dollars, but this is obviously a clerical error; for the testimony shows one hundred and sixty-eight dollars were paid and that sum has to be accepted in order to make the court's computation come out right.

It is evident the court only gave interest on the loan from March 9, 1894, to October 25, 1898; we suppose on the theory that Reitz endeavored to pay his loan on the last date, so that thereafter it ceased to draw interest.

It is admitted the premium charged was usurious because not fixed by bidding and that, hence, Reitz was entitled to credit for what he had paid as premiums.

The respondent disputes the correctness of the decree but he submitted to it.

The appellant assigns these exceptions: first, the credit of $153.60 for monthly stock payments was wrongly allowed, because the evidence made it clear the company had been insolvent for a long time and the respondent was bound to share in the losses with the other stockholders; second, the credit of $18.90 allowed by the court as interest payment was erroneous because in effect it was giving the plaintiff compound interest; third, the court erroneously deducted $16.50 from the face of the loan when in fact the respondent had received credit for that sum on his monthly dues for March, April and May; fourth, the court computed interest on the loan to October 25, 1893, whereas the interest should have been computed to the date of the judgment; fifth, the credit of $61.20 allowed Reitz for dividends declared by the company while a going concern should not have been allowed, because the testimony showed said dividends were declared while the company was in fact insolvent.

It should be stated that after the institution of this action, to-wit, on March 17, 1900, the Aetna company made a general assignment to James Hayward for the benefit of creditors, and Hayward was afterwards substituted as defendant and filed an answer that the company had long been insolvent and Reitz was not entitled to charge against the defendant the amount paid by him for stock dues because he, as a stockholder, was liable for his proportion of the losses of the company.

1. Appellant contends that Reitz had no right to withdraw his shares while they were pledged, citing in support of that contention the statute which says stock pledged as security for a loan, or for any other charge

in favor of the association, may not be withdrawn.  R. S. 1899, sec. 1370.

That section means such shares can not be withdrawn while the loan stands, so as to deprive the association of a lien on them, and does not mean that the loan may not be paid off and the value of the stock taken into account in settling it; otherwise it would be in conflict with section 1368, besides producing an unreasonable result.  The theory on which loans are made (unhappily, too rarely realized in practice) is, that when the stock has been fully paid, according to the ordinary course of business, the stock at its matured value will discharge the loan.  If, however, the losses are so heavy that the stock does not go to par, whatever value it has when the borrower pays he is entitled to have credited on his indebtedness.  Brown v. Archer, 62 Mo. App. (K. C.) 278; Clark v. Ass'n, 85 Mo. App. (St. L.) 388.

2.   The appellant company was insolvent, as the evidence shows, in October, 1898, when Reitz says he tendered payment of his loan, although it kept going until March 7, 1900.  But on the first date its liabilities to its shareholders were far in excess of its assets, which constituted insolvency.  Continental Assn. v. People, 167 Ill. 195; Towle v. Ass'n, 61 Fed. 446.

We might not be willing to agree fully to the definition of insolvency of a building and loan association given in the last cited case; but according to any conceivable definition appellant company was insolvent; for the evidence shows its assets fell below its liabilities forty or fifty per cent.  And, indeed, it will be seen the circuit court found it was then insolvent.

Reitz gave no notice, as the statute requires, of an intention to pay off his loan and surrender his stock; but it is contended notice was waived, and we think it was waived so far as a settlement of the loan account and surrender of the pledged stock was concerned; for the only dispute between the company and Reitz was as to the amount he owed the company and no objection

was made on the score of notice.. Clark v. Ass'n, supra.

But the law is settled that if a member of a building and loan association serves notice of an intention to withdraw, that step gives him no right to a preference in the distribution of the company's assets if its activity is terminated by insolvency proceedings before the withdrawal is accomplished. In re Progressive Building Society, 54 L. T. 45; Hanney v. Ass'n, 16 N. W. 450. A member is not entitled to surrender his shares and be paid their full value if the corporation is insolvent; as has never been doubted, provided the insolvency is known or notorious. In re Sunderland, 24 Q. B. 394. And according to the better view, it seems to us, and the one adopted in this State, it is immaterial that the withdrawing member was ignorant of the association's financial condition. Hohenshell v. Ass'n, 140 Mo. 566; Christian's Appeal, 102 Penn. St. 184.

The point of difficulty is not whether the court erred in refusing to credit Reitz with the full amount he had paid on his shares and in crediting him instead with their withdrawal value in October, 1898, but whether he was entitled to be credited with any part of his stock payments after the corporation had become insolvent and its assets had passed into the hands of an assignee; and this point turns, we think, on whether Reitz's rights were fixed by the institution of his suit for a settlement or by the company's subsequent assignment for the benefit of creditors. Well-considered cases relied on by the defendant hold that a borrowing member of a defunct association is not entitled to have any part of the dues paid on stock credited on the loan, but must wait for dividends until final distribution of its assets. Meanwhile, the assignee or receiver may recover the amount of the loan without any credit being allowed for stock payments. The company's assignment, receivership, or cessation of business because of insolvency, puts an end to or greatly modifies the contract between the borrower and the company, so that the latter's responsi-

bility is placed on a different basis.    The debtor is charged only with simple interest on the money received by him and is credited with the premium paid; and this for the reason that the consideration for the premium is gone, which consideration was that the borrower be permitted to pay the debt in installments extending over years, his stock getting its share of benefit from the payments.    Most decisions hold the association is entitled to collect the money advanced with simple interest, the debtor being credited with the interest and premium paid, but, as stated, with no portion of payments made on stock, or with any dividends which may have been declared on the stock but not collected.    As to those demands against the association, borrowing members are left, like the non-borrowing or investing members, to the final distribution of the assets, when they will receive their pro rata; and this is the rule in Pennsylvania, from which our building and loan law was taken and whose decisions have been followed in construing it.    Strohen v. Ass'n., 115 Penn. St. 273; State Ass'n. v. Carroll, 4 Pa. Dist. R. 6; Woerheide v. Johnston, 81 Mo. App. (St. L.) 193; Towle v. Ass'n, supra; Rogers v. Hargo, 92 Tenn. 35; City Loan Ass'n v. Goodrich, 48 Ga. 448; Choister v. Young, 69 Ill. App. 252; Rogers v. Raines, 100 Ky. 295; Post v. Ass'n, 34 L. R. A. (Tenn.) 201; Globe Ass'n v. Stephens, 60 S. W. 732; U. S. B. & L. Ass'n v. Howland, 60 S. W. 707.

This case does not fall within the above rule; for the plaintiff instituted his action while the company was still going, and that circumstance puts him in a different position with reference to obtaining credit for stock payments and dividends from what he would occupy if no suit had been instituted prior to the failure.    An assignment does not prevent the plaintiff, in a pending litigation against the assignor, from obtaining judgment just as he would have done if no assignment had been made.    The court which first obtained jurisdiction of the litigation proceeds to judgment in that particular

matter; and this has been held to be.true in the case of building and loan associations. Connolly v. Ass'n, 6 Wkly. Notes Cases 176; Barnum Wire & Iron Works v. Speed, 59 Mich. 272; Turner v. Mason, 65 Wis. 667; Howitt v. Blodgett, 61 Wis. 376; Eureka Steam Rolling Co. v. Sloteman, 67 Wis. 118; Collier v. Bickley, 33 Ohio St. 523. The rule is that when an assignment is made for the benefit of creditors, the assignee takes the estate *cum onere* and subject to all fixed and accrued rights. Drew Glass Co. v. Baldwin, 27 Mo. App. (K. C.) 44; Drew v. Drum, 44 Mo. App. (St. L.) 25. Plaintiff's right to surrender his stock and pay off the loan at any time was a substantive part of his contract with the association (Bertche v. Ass'n, 147 Mo. 343; Latimer v. Equitable Co., 81 Fed. 776); and as he had previously begun this suit to enforce that right,.his relief can not be curtailed because the company thereafter assigned. We hold, therefore, that the plaintiff was entitled to be credited with the value of his pledged stock at the time he demanded a settlement, and also with the dividends which had been therefore declared.

3. But it does not follow that he should receive credit for the whole amount of stock dues he had paid; nor did the circuit court allow him credit to that amount, although the case is argued here by the appellant as if he received credit for the full sum paid on his stock. The testimony showed he had paid $256 on the shares of stock which he pledged to secure his loan, and the court allowed him $153.60 on that score, or exactly sixty per cent of what he had paid, making him bear a loss of forty per cent.

The statute provides that a borrowing member may repay his loan at any time, by giving thirty days' notice in writing, on the terms. and conditions prescribed by the by-laws of the association; and that in the absence of a by-law the member, on settling, shall be charged with the full amount of the loan as originally made to-

gether with all installments of dues, interest, premium and fines remaining due and unpaid, and shall receive credit, if he desires to surrender his shares, for the withdrawal value of the shares pledged for the loan.    R. S. 1899, sec. 1568.

The withdrawal value of the shares must be computed, therefore, and the shareholder allowed a credit for what they are actually worth; for the underlying idea of building and loan associations is mutuality of losses and profits by all shareholders, who are, in a sense, partners, as has been many times decided.   Hohenshell v. Ass'n, 140 Mo. 566; Bertche v. Ass'n, 147 Mo. 343; Shell v. Ass'n, 150 Mo. 103.   As stated, the learned trial judge recognized this rule and endeavored to ascertain and credit Reitz with the cash value of his stock and thus force him to bear his proportion of the company's losses.

The evidence introduced by the assignee, which was all the evidence on the subject, showed that not more than fifty-five or sixty cents on the dollar of what had been paid by stockholders would remain in solvent assets after discharging the company's outside liabilities. In other words, the course of its business had been such that, instead of earning a profit, there had been a loss of from forty to forty-five per cent.   The court took the view of the evidence most favorable to Reitz, and allowed him sixty per cent of what he had paid on his shares.

No scheme for fixing the amount to be returned to a withdrawing stockholder of a building and loan corporation which will not prove unjust if the company fails to mature its stock, has been devised or can be, as far as we can see, and for this reason:   The withdrawal of stock and payment of loans before the shares mature, are privileges not contemplated in the scheme of a building and loan association, but are departures from it tolerated for practical reasons. Members are permitted

to withdraw their shares instead of being compelled to hold them until maturity, because the privilege has been found necessary to enable associations to secure a sufficient membership.   So, borrowers are permitted to pay loans at their pleasure, instead of by installments until their stock matures and the loan is thereby discharged in the normal evolution of the association, because the exigencies of business have shown that privilege to be necessary.   Both privileges are opposed to the central idea of the building and loan association scheme and can not fail to work injustice if an association becomes insolvent; for it may continue going, with its insolvency unknown for a long time except to the inner management; meanwhile withdrawals occur by which some members get back all they paid in, when, on account of losses, they are entitled only to part.   The law, therefore, does not in theory permit withdrawals after an association is insolvent.   But if the surrender of stock was perfected while it was still a going concern though, in fact, insolvent, it is an executed transaction and the proceeds may be retained, unless fraud can be imputed to the withdrawing stockholder.   Booz's Appeal, 109 Pa. St. 192; Strohen v. Ass'n, 115 Penn. St. 273; Christian's Appeal, 62 Penn. St. 184; Mechanics Ass'n v. Swartz, 5 Pa. Dist. R. 318; Emerson v. Schmidt, 24 W. L. Ball. 56.   The circuit court acted in accordance with our statutes, and the mode they prescribe is likely as fair as any.

4.   The decree of the court contains the item of credit in Reitz's favor "to stock $140;" but this is conceded to mean interest paid by Reitz and, in fact, he paid just that much interest at the rate of six per cent from March, 1894, when he made the loan to October, 1898, the date at which the court below treated the rights of the parties as having been fixed by a tender.

5.   The circuit court only charged Reitz with the actual cash received by him ($473.50) and interest thereon ($127.21) and credited him with said interest

which he had paid, to-wit, $140. While the reason for this ruling is not stated in the decree, it was obviously made on the theory that the association charged interest on five hundred dollars when in fact it only lent $473.50 and therefore the $140 interest was usurious as being in excess of the rate of six per cent stipulated in the note. But we are unable to see why Reitz should not pay interest on the whole five hundred dollars, nor does he contend he should not. He agreed to pay ten dollars attorney's fee and it is conceded the sum of $16.50 was rightly deducted for interest and premiums already due when the money was advanced. True, the premiums were illegal; but if he was credited with them on his loan, as he was in another item, he should have been charged with them to make up the full amount of the loan. There was no difference between handling Reitz's five hundred dollars and receiving back from him $26.50, and deducting that from the face of the loan and then paying him the difference. The court should have allowed interest, we think, on the five hundred dollars.

6. Reitz was credited with $168 as premiums and $30.14 interest thereon, which items are not contested.

7. The next exception taken by the appellant relates to the refusal of the court to compute interest on the loan to the date of judgment. Interest was computed to the latter part of October, 1898, on the evidence of Reitz that he had offered to pay what he owed at that time and tendered his stock in payment; but a settlement was refused unless he paid $105, the balance the company claimed he was owing. Reitz had the right to pay off his loan at any time, and the tender of settlement stopped the interest.

8. The trial court allowed the respondent interest on the $140 interest he had paid on his loan, presumably on said court's theory that it was wrongly exacted on the whole amount of $500; but as we hold the company was entitled to interest on the $500, that theory

of computation is not admissible, because $140 was the interest the loan actually earned for the company.

9. As to the dividends allowed, as they were earned and declared on the pledged stock while the company was active and long before it failed, we think plaintiff was entitled to be credited with them. The court allowed no credit for the dividends earned by the Steen stock.

10. The Steen stock was acquired long after the loan was made, was not pledged to secure it and was totally unconnected with it. As no notice of withdrawal of that stock had ever been given by Reitz, whatever equitable claim he had for its value and dividends against the association was not due at the date of the assignment and, hence, did not constitute a set-off in his favor as against the demand of Hayward the assignee for the payment of Reitz's note. The question is not really before us as respondent did not appeal; but we think the court did right not to take into account the Steen stock. Homer v. Bank, 140 Mo. 225; Storts v. George, 150 Mo. 1.

The refusal of the court to compute interest on the full face of the note was error as was its resultant action in allowing Reitz credit for interest on the interest paid. Those two items being changed, the balance due the appellant is $88.05, and with a modification of the judgment to that effect, it is affirmed, the respondent to pay the costs of the appeal. *Bland, P. J.,* and *Reyburn, J.,* concur.