# UNION SAVINGS & INVESTMENT CO. v. DISTRICT COURT OF SALT LAKE COUNTY.

### No. 2650.   Decided April 30, 1914 (140 Pac. 221).

1. EVIDENCE—PRESUMPTION—OFFICIAL ACTION. Where a complaint for the appointment of a receiver for a building and loan association did not allege that the officers of the association or the Secretary of State had failed to perform the duties imposed upon them by Comp. Laws, 1907, secs. 392-402, regulating such associations, it must be presumed that the officers have performed their statutory duties.   (Page 402.)

2. CORPORATIONS—DISSOLUTION—POWER OF COURTS.   The power to wind up the affairs of a corporation and to dissolve it is not one which inheres in the courts, but exists only when conferred by statute.   (Page 402.)

3. EVIDENCE—JUDICIAL NOTICE—MATTERS OF COMMON KNOWLEDGE— BUILDING AND LOAN ASSOCIATIONS.   The court can take judicial notice of the general purpose and method of doing business of building and loan associations.   (Page 404.)

4. BUILDING AND LOAN ASSOCIATIONS—REGULATIONS—POLICE POWER. In view of the purpose of building and loan associations to enable a large number of persons who are without ready means to build homes which are paid for in small installments, and the benefit to the community derived from such associations, the state may, under its police power, exercise rights of supervision and inspection over such associations greater than over ordinary business associations.   (Page 404.)

5. BUILDING AND LOAN ASSOCIATIONS—MORTGAGES—PAYMENT—DIS-
SOLUTION OF ASSOCIATION. Whenever a building and loan associa-
tion is declared insolvent, its right to collect the installments
payable by its members ceases, and the mortgages of borrowing
members at once become due and payable, and may be fore-
closed. (Page 405.)

6. BUILDING AND LOAN ASSOCIATIONS — DISSOLUTION—STATUTORY
REMEDIES. The remedy given by Comp. Laws 1907, sec. 400,
which provides that when a domestic building and loan associa-
tion is, in the opinion of the Secretary of State, conducting its
affairs illegally, or is unsafe, he shall notify the directors, and
if the objections be not immediately remedied, shall advise the
Attorney-General, who shall take the necessary steps to wind up
its affairs, is exclusive, and the courts cannot appoint a receiver
to wind up the affairs of the association at the request of one
or more of the shareholders. (Page 406.)

7. CONSTITUTIONAL LAW—OPEN COURTS—DISSOLUTION OF BUILDING
AND LOAN ASSOCIATION. Const. art. 1, sec. 11, requiring the
courts to be open to all alike, does not prevent the state from
reserving to itself the sole right to bring actions for the dis-
solution of building and loan associations, since that section
is a limitation, not a grant of power, prohibiting any restric-
tions upon the common-law right of access to the court, but not
enlarging that right. (Page 407.)

8. BUILDING AND LOAN ASSOCIATIONS—DISSOLUTION—RIGHT OF AC-
TION. The right to dissolve a corporation and wind up its
affairs for any cause against its consent belongs to the sovereign
state alone, and, in the absence of an express statute to that
effect, the courts have no power to dissolve such corporation
at the instance of an individual suitor. (Page 408.)

9. BUILDING AND LOAN ASSOCIATIONS—ACTIONS—DISSOLUTION. An
action by a shareholder to secure the appointment of a receiver
to wind up the business of a building and loan association,
while not technically an action to dissolve the association, has
practically that effect, and cannot be entertained by the courts.
(Page 408.)

10. BUILDING AND LOAN ASSOCIATIONS — DISSOLUTION — FAILURE OF
STATE OFFICER TO ACT. The danger that a shareholder in a
building and loan association may suffer irreparable injury
through the failure of the Attorney-General to wind up the af-
fairs of the association, as required by Comp. Laws 1907, sec.
400, does not authorize an action for that purpose by the share-
holder, since it is presumed that every officer will do his duty,
and if the duty is clear the Attorney-General may be required
by the courts to perform it. (Page 409.)

11. **BUILDING AND LOAN ASSOCIATIONS—ACTIONS BY SHAREHOLDERS.** An individual shareholder in a building and loan association may maintain an action to prevent its officers from doing some forbidden act, or from continuing a course of mismanagement of its affairs, or to require the association to obey the statute, or for the purpose of obtaining a judgment against the association. (Page 410.)

12. **BUILDING AND LOAN ASSOCIATIONS—ACTIONS FOR DISSOLUTION— STATUTORY PROVISIONS—CONDITIONS PRECEDENT.** Before an action for the dissolution of a building and loan association is brought under Comp. Laws 1907, sec. 400, the association should be given an opportunity to correct any abuses in its management, unless its affairs are such that, in the opinion of the Secretary of State or Attorney-General, they cannot be corrected. (Page 410.)

13. **BUILDING AND LOAN ASSOCIATIONS—ACTIONS FOR DISSOLUTION— STATUTORY PROVISIONS—DUTY OF ATTORNEY GENERAL.** Under Comp. Laws 1907, sec. 400, providing that if the Secretary of State is of the opinion that a building and loan association is violating the law or is unsafe, he shall advise the Attorney-General, who must bring an action to dissolve the association, if the Secretary of State refuses to perform his duty, it nevertheless is the duty of the Attorney-General to bring the action, if it is made to appear to him by any shareholder that the association is not complying with the law. (Page 411.)

Original Proceedings in the Supreme Court by the Union Savings & Investment Company for prohibition against the District Court of Salt Lake County, Utah.

WRIT OF PROHIBITION ISSUED.

*N. V. Jones* and *B. J. Stewart* for plaintiff.

*C. S. Patterson* and *J. D. Skeen* for defendant.

FRICK, J.

The plaintiff, an incorporated building and loan association of Utah, commenced this proceeding in this court against the district court of Salt Lake County to prohibit that court from passing upon an application for, and from appointing a receiver in a certain action commenced against, the plaintiff in said court.

This proceeding is based upon the following facts:

One Albert C. Fisher, as a member or shareholder of the plaintiff, commenced an action in the district court aforesaid to recover the withdrawal value of his shares, stating specifically the value thereof. While said action was pending in said court a number of other shareholders of plaintiff intervened therein for the purpose of recovering from it the withdrawal value of their shares. After said shareholders had intervened Fisher dismissed his complaint, and he is no longer interested in the action. The interveners, in their complaints in intervention, in substance alleged that the affairs of the plaintiff have been grossly mismanaged; that it is about to wrongfully divert certain property and assets to another corporation to the detriment and prejudice of its shareholders, including the interveners, and that it has been guilty of gross extravagance in paying salaries, and is insolvent and unable to further conduct its business as a building and loan association. The interveners, therefore, prayed judgment for the withdrawal value of their shares, and in their complaints further prayed "that an immediate order be issued directing and requiring the defendant corporation (plaintiff) to appear . . . to show cause . . . why a receiver . . . should not be appointed to take charge of the assets of the defendant corporation and to wind up its business, and that at such hearing the court do appoint some suitable and discreet person to take charge of all the assets of said corporation, to convert the same into money and under the direction of the court to distribute the same among those found to be lawfully entitled thereto, and to do all things usual, necessary and proper to be done in matters of receivership." The plaintiff appeared in the action, and by demurrer challenged the sufficiency of the complaints in intervention, and in view of our statute, also challenged the power of the district court to hear the application for the appointment of a receiver or to appoint one. The district court overruled the demurrer, whereupon the plaintiff invoked the aid of this court upon an application duly made, wherein it asks us to prohibit the district court from

appointing a receiver for the purposes prayed for by the interveners in their complaints.

All the parties in interest appeared in this court, and, in a most commendable spirit fully submitted the whole matter of whether, under the statute, the district court upon the application of a shareholder has the power to appoint a receiver for the purposes prayed for by the interveners. It was conceded at the hearing that those who are seeking for the receiver constitute about four or five per cent. of the entire number of shareholders or members of the plaintiff. The sole question which we are called on to determine in this proceeding is whether, under our statute, the district court at the instance of a shareholder may, over the objection of the plaintiff, and without its consent, appoint a receiver to take charge of its assets, convert them into cash, and distribute them among its shareholders and thus terminate and wind up its business affairs. The powers conferred and duties imposed on building and loan associations, domestic and foreign, are found in Comp. Laws 1907, sections 392 to 402, inclusive. Under section 392 building and loan associations may be incorporated as are other corporations for profit, and, except as otherwise provided in the sections just referred to, are governed by the general statute relating to such incorporations. What we are now specifically concerned with are the provisions of the statute which specially relate to domestic building and loan associations. Section 397 provides that before doing any business in this state all foreign building and loan associations must make out and file with the Secretary of State a verified statement, containing the matters specified in the statute, and if such statement is in all respects satisfactory to the Secretary of State, and is in compliance with the statute, he is required to issue a certificate authorizing such building and loan association to do business in this state. Section 398 provides that on or before the first day of March in each year every building and loan association, whether domestic or foreign, shall file with the Secretary of State the statement required in section 397,

44 Utah 26

and shall cause a copy thereof to be published at least four times in some newspaper published and having a general circulation in this state. Such publication must be completed on or before the 1st day of May, and proof of publication must be filed with the Secretary of State.

Section 399 provides:

"If any domestic building and loan association shall refuse to submit to examination by the bank examiner, the Secretary of State shall advise the Attorney-General, who shall proceed to wind up its affairs; and if any foreign association refuse, the Secretary of State shall revoke its certificate of authority."

Section 400 reads as follows:

"When, in the opinion of the Secretary of State, any such corporation is conducting its business illegally or in violation of its articles of incorporation or by-laws, or is practicing deception upon its members . . . or if he is satisfied that its affairs are in an unsafe condition, he shall notify its directors or managers, and if it shall not immediately amend its course or put its affairs upon a safe basis, he shall in the case of a domestic corporation advise the Attorney-General thereof, who shall take the necessary steps to wind up its affairs, and in the case of a foreign corporation, he shall revoke its certificate of authority."

Section 401 is not material here.

Section 402 makes a failure to comply with the provisions of sections 397, 398, and 399, *supra,* a misdemeanor, and punishable as such.

There is no allegation in the complaints in intervention that the provisions of our statutes have not been fully complied with, and hence counsel for plaintiff insist that we must indulge the presumption that both the officers of plaintiff and the Secretary of State have performed the duties imposed by statute. Such, in the absence of any allegation to the contrary, is no doubt the law. It is contended by plaintiff's counsel that in view of the foregoing statutes the district court has no power to entertain an application made by a shareholder or member of the plain-

tiff, for the purpose of winding up the affairs of the association, without alleging that he has applied to the Secretary of State to have that officer notify and demand from the plaintiff that it comply with the requirements of the Secretary of State and with the provisions of section 400. It is further contended that in case the Secretary of State shall find that the conditions specified in section 400 exist, and the building and loan association shall fail to comply with that officer's request, it is his duty to forthwith advise the Attorney-General of the state of that fact, and that it is then the duty of the Attorney-General to commence an action to wind up the affairs of the plaintiff, and that the district court cannot appoint a receiver for the purposes aforesaid except upon the application of the Attorney-General. Upon the other hand, counsel for the interveners contend that the remedy provided by the statute is not exclusive, and that any one or more of the shareholders, if they have sufficient cause therefor, may commence an action to appoint a receiver and wind up the affairs of the association and to distribute its assets among those to whom they should be legally distributed. It is settled law that the power to wind up the affairs of a corporation and to dissolve it is not one which inheres in the courts. It is therefore contended by plaintiff's counsel that where a statute prescribes how and by whom an action to wind up the affairs of a business corporation and to dissolve it shall be brought, such a statute is exclusive. We have no statute authorizing our courts to dissolve a corporation without its consent; that is, without the consent of its duly authorized officers, although we have a statute authorizing such to be done upon the application of the officers of the corporation. Comp. Laws 1907, sections 3661 to 3667, inclusive. We also have a statute in case a corporation has been dissolved or is insolvent, or has forfeited its corporate rights, which authorizes the court to appoint a receiver for such defunct corporation. The only statute, therefore, that we have which in terms authorizes a court to dissolve a corporation without its consent, that is, to "wind up its affairs," is section 400, *supra*. There is, therefore, much force to the

contention of plaintiff's counsel that the method provided by the statute, where one is provided, to dissolve a corporation is exclusive.

There are, however, other cogent reasons why the provisions of our statutes relating to building and loan associations should be followed. While the particular methods followed by the plaintiff in its transactions with its members are not set forth, yet we may take judicial notice of the general purpose of such associations, and, in a general way at least, are charged with knowledge of their methods of conducting business. We, therefore, judicially know that such associations, as a general thing, have a large membership, that is, a large number of shareholders; that in becoming a shareholder the applicant usually is required to pay only a very small amount, and that by making a large number of monthly or weekly payments, as the case may be, the member, after a series of years pays up his stock; that when his shares are thus fully paid up he can draw the par or actual value thereof, or he may borrow from the association in advance of such payments an amount equal, or nearly so, to the par value of his stock; that the money is usually borrowed for the purpose of building a home, which home, together with the borrower's stock, may be mortgaged and pledged as security for the payment of the loan, and that such loans are usually paid off in monthly or weekly payments as aforesaid; that provisions are also usually made for the withdrawal by members under certain conditions, and when this is the case a member may withdraw and receive the accrued value of his shares at the time of such withdrawal.

The general scheme and purpose of such associations, therefore, is to permit persons without either ready or large means to obtain sufficient money to build homes and to pay for them in small payments at stated intervals of time. A building and loan association honestly, efficiently, and safely conducted may therefore be of great benefit to any community, and more particularly to one where there are a large number of wage earners. The

state, under its police power, may thus assert the right to exercise some rights of inspection and supervision over building and loan associations, as well as over banks, which it may not deem necessary with respect to corporations organized for profit generally. In view, therefore, that as a general thing there are a considerable number of persons who are without means, or, at least without ready means, who become members of such associations, and that they do so for the purpose of building moderate and inexpensive homes, the state may well, for their benefit and protection, throw some safeguards around such associations, and require one or more state officers to perform some special duty or duties with regard to them. In this, like in a number of other states, therefore, there are statutes requiring such associations to file with a certain state officer and publish periodical statements showing their financial condition; that certain officers may at any time examine into their financial affairs, and, if found in an unsatisfactory or unsafe condition, may require such associations to remedy any defects and to comply with the statutes, and upon failure to do so a particular officer named shall go into court and wind up their affairs and collect the assets for the use and benefit of those who may perhaps be financially or otherwise unable to protect their own interests, which individually may not be great.

In this connection it should also be remembered that the moment one of those building and loan associations is declared insolvent, that moment its right to collect the monthly or weekly payments from its members ceases, and the mortgages of the borrowing members at once become due and payable and may be foreclosed. In such event the entire purpose of the association fails, and thus results in a dissolution of the existing contractual relations between the association and its members except for the purpose of liquidating its affairs. Upon these propositions, so far as we know, there is no diversity of opinion. See *Weir v. Granite, etc., Ass'n,* 56 N. J. Eq. 234, 38 Atl. 643; *Curtis v. Granite etc., Ass'n,* 69 Conn. 6, 36 Atl. 1023,

·61 Am. St. Rep. 17; *Straus v. Carolina, etc., Ass'n,* 117
N. C. 308, 23 S. E. 450, 30 L. R. A. 693, 53 Am. St.
Rep. 585; and Endlich on B. & L. Ass'ns, section 523. A
number of cases are cited in the foregoing cases and by Mr.
Endlich, to which we need not specially refer. To declare
a building and loan association insolvent, therefore, usually
results in requiring a large number of borrowing members
who may have paid but a small part of their loans to forth-
with pay the full amount of their mortgages. Such being
the unavoidable result, the state may well make some special
effort for the purpose of inducing building and loan asso-
·ciations to conduct their business prudently, honestly, and
safely; that in case such is not done some official with au-
thority to investigate their affairs may detect any wrong do-
ing, and may thus require speedy action on the part of the
:association to correct such wrongs, and again place its busi-
ness affairs upon a safe basis; that if this cannot be done,
then that such officers go into the proper court and wind up
the affairs of the corporation and distribute its assets among
its members and other creditors, if it has any, and finally to
prevent needless and expensive litigation on the part of
perhaps only one or a small number of dissatisfied nonbor-
rowing shareholders to the detriment of a much larger num-
ber of borrowing members whose interests should not be
jeopardized by unnecessary litigation. It requires no ar-
gument to demonstrate that such protection on the part of
the state must result in adding both confidence in and stabil-
ity to such associations. In one sense, therefore, a large por-
tion of the public may be both interested and benefited either
directly or indirectly by the protection that the state affords.

While the cases upon the proposition of whether the right
to bring an action for the purpose of winding up the affairs
of the association under a statute like ours is exclu-
·sively vested in the Attorney-General are not numer-
ous, yet there are at least two that are squarely in
point, and in which it is held that for reasons we have given,
and perhaps others, the right to bring an action for the pur-
·pose aforesaid, in the first instance at least, is exclusively

vested in the official named in the statute. See *Ulmer v. Loan & Bldg. Ass'n,* 93 Me. 302, 45 Atl. 32; *Huntington, etc., Ass'n, v. Fulk,* 158 Ind. 113, 63 N. E. 123. The doctrine is also recognized, under a somewhat different statute in *Falls v. Building & Loan Ass'n,* 105 Tenn. 18, 58 S. W. 325. The same is true in Illinois. The precise question was, however, not passed on by the court of that state. See *Broadwell v. Homestead Ass'n,* 161 Ill. 327, 43 N. E. 1067, and *Illinois, etc., Ass'n, v. People,* 173 Ill. 638, 50 N. E. 1007. In all of the foregoing cases, except those from Maine and Indiana, it is in effect held that the association may waive the right and may consent to have a receiver appointed in an action commenced by a shareholder. That question was neither presented nor considered in either the Maine or Indiana cases. Counsel for the interveners frankly conceded at the hearing that they were unable to find any cases in which the question was squarely presented, and in which the ruling in the Maine and Indiana cases were disapproved, nor have we been able to find any. There are some cases cited by counsel for the interveners, however, where such actions were brought by a shareholder, or a number of them, but the question now under consideration was neither presented nor decided in those cases. Indeed, in *People v. Lowe,* 117 N. Y. 175, 22 N. E. 1016, which is one of the cases cited, the Justices of the New York Court of Appeals were divided, and for that reason the question was left undecided. What authority there is upon the point raised by plaintiff's demurrer is therefore against the contention of the interveners.

But it is contended that under article 1, section 11, of our Constitution the courts must always be open to all alike. It is now too well settled to require elucidation that state Constitutions are not intended as grants but merely as limitations of powers. What is said, therefore, in in the section just referred to about courts having to be open to all is merely a reiteration of the pre-existing common-law right with a limitation preventing the legislature from in any way impairing or curtailing that right. It was not in-

tended, by adopting that and similar sections usually found in Constitutions, to change the law with respect to certain rights which are vested in the State, which alone can exercise sovereign powers. For instance, an individual may not sustain an action and assail the right of a corporation, which is a creature of the state, to continue its business, although such corporation may transcend its corporate powers or rights. Such matters are still left in the hands of the sovereign state to be dealt with as may seem best to it, and the state may not be interfered with by any dissatisfied stockholder except to arrest or prevent a wrong done or contemplated by the corporation in the courts.

The right to dissolve a corporation and wind up its affairs for any cause against its consent belongs to the sovereign state alone, and in the absence of an express statute to that effect the courts have no power to bring about that result at the instance of an individual suitor.

To dissolve the plaintiff corporation is precisely what the interveners are attempting to do in the action pending in the district court. It is true that in attempting to meet that contention counsel for the interveners insisted at the hearing that to appoint a receiver to wind up the affairs of the corporation does not necessarily dissolve it. Let it be conceded that technically this contention may ordinarily be true, yet where a corporation like a building and loan association has no capital except such as is derived from its members, and where all of its affairs must necessarily cease and its membership necessarily be released from all of their obligations to the association, and thus logically must also cease to continue as members except for the purposes of liquidation, the result of appointing a receiver for the purposes prayed for by the interveners is manifestly nothing short of a complete dissolution of the corporation. It is useless, therefore, to seek to disguise the fact by the mere use of words. It may be conceded that if the facts stated in the complaints of the interveners are found to be true, then there can be but one ultimate result, and that is

the winding up of the affairs of the plaintiff association, and the distribution of its assets among its members and other creditors, if there are any such. But the question we must decide cannot be controlled, not even influenced, by what the ultimate result respecting plaintiff's continuing in business must or may be. The question is a much broader one. The question we must decide is whether every dissatisfied shareholder may go into a court at any time and ask that court to wind up the affairs of a building and loan association so that he may at once, or as soon as the business affairs of the association can be wound up, obtain the withdrawal value of his shares, and in so doing arrest and frustrate the entire scheme and purpose of the association and, as we have seen, dissolve all of the existing contractual relations between the association and its members except for the purpose of liquidation, without giving the association the opportunity contemplated by the statute to correct any evils or wrongs that may exist in managing its affairs. If this may be done, then any shareholder may jeopardize the welfare of the association and its members at any time and without adequate cause. We cannot escape the responsibility of determining the meaning of the statute, and whether it is intended to protect the rights of all such associations and their members rather than, without complying with the statute, to vindicate the alleged rights of a few members of but one association.

Nor is the contention sound that the shareholder may suffer irreparable injury because the Attorney-General, or some other state officer, may refuse to act, or may act tardily. We must presume that every officer will do his duty. Moreover, where the duty is clear and the right is equally so, the courts can, without any delay whatever, require any officer to act. Again, there is nothing in the statute which prevents any shareholder, or any number of them, from joining hands with the Attorney-General and assisting him in any way, even in the conduct of an action once pending. The only purpose of the statute is to prevent hasty and ill-considered action in the courts by a party without giving the association any opportunity what-

ever to first correct any wrongs that may exist in its management or business affairs, and which, if corrected, may be for the best interests of a great majority of the shareholders without injury or prejudice to any. This is clearly pointed out in the Illinois cases to which we have referred. Further, we think any shareholder may at any time call the attention of the Secretary of State to any wrongs that are being perpetrated, or are about to be, or are in contemplation by any building and loan association which do or may affect his rights or interests.

We are also of the opinion, and so hold, that where the purpose of the action is not to wind up the affairs, but is merely to prevent it from doing some forbidden act, or from continuing the mismanagement of its affairs, or to require it to follow the provisions of the statute and cognate matters, or for the purpose of obtaining a judgment against the association, and, in short, any offensive or prohibitive action which is not intended to destroy the existence of the association, such action may be brought by any shareholder at any time in any court of competent jurisdiction. Where, however, as here, the manifest purpose, and the only possible result, of the action is to wind up all of the business affairs of the association, and the effect is necessarily to dissolve its corporate existence, the action should be commenced by the Attorney-General as pointed out in the statute.

We further hold that before such action is brought the association should be given an opportunity to place its business affairs upon a safe basis, to correct any abuses in its management, and in all things comply with the law, unless, in the opinion of the Secretary of State and the Attorney-General, the business affairs are such that they cannot be remedied or corrected. If such should be the case, it would be useless to require from the association, and to give it time to do, that which was manifestly impossible. The facts in that regard, however, could easily be alleged by the Attorney-General, and the court could permit the action to proceed, although no time or op-

portunity had been given the association to correct the evils that it is clear it could not correct.

We are also of the opinion that in case the Secretary of State fails or refuses to comply with the provisions of the statute it nevertheless is the duty of the Attorney-General to bring an action as herein stated when it is made to appear to him by any shareholder that any building and loan association has failed or refused, and continues to fail or refuse, to comply with any of the provisions of the statutes to which reference has been made herein. We think such a course is contemplated by the statute for the reason that any other course would permit the Secretary of State to prevent an action against any such association.

We are of the opinion that a peremptory writ as prayed for by the plaintiff should issue. Such is the order.

McCARTY, C. J., and STRAUP, J., concur.