CHARLES J. CORBETT, APPELLANT, v. LINCOLN SAVINGS AND LOAN ASSOCIATION, RESPONDENT.*—17 S. W. (2d) 275.

St. Louis Court of Appeals.   Opinion filed May 7, 1929.

*Corpus Juris-Cyc References: Constitutional Law, 12CJ, section 220, p. 787, n. 96.

*Ephrim Caplan* and *Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Vincent L. Boisaubin* for respondent.

SUTTON, C.—In this case the court below gave judgment for defendant after sustaining a demurrer to plaintiff's petition when plaintiff declined to plead further. From this judgment plaintiff appealed to the Supreme Court. But that court, finding itself without jurisdiction of the cause, transferred it to this court. The opinion transferring the cause is reported in 4 Southwestern Reporter (2d Series) at page 824.

The petition alleges that plaintiff was the owner of four certificates in an organization known as the Lincoln Housing Trust; that in May, 1923, the Supreme Court of Missouri held that the business in which that organization was engaged was without legal *status* in Missouri; that under that ruling the finance commissioner proceeded against all housing trusts doing business in the State of Missouri, excepting the Lincoln Housing Trust; that thereupon certain certificate holders of the Lincoln Housing Trust filed suit in the circuit court of St. Louis for the purpose of having a receiver appointed for said Lincoln Housing Trust; that thereupon Frank P. Millspaugh, Finance Commissioner, at the instance of the officers and directors of the Lincoln Housing Trust instituted a suit in the circuit court for the purpose of procuring the appointment of said finance commissioner as receiver of said Lincoln Housing Trust; that in said suit said finance commissioner was appointed receiver, and employed counsel for the purpose of working out a plan to divert the assets of the Lincoln Housing Trust into the Lincoln Savings and Loan Association, defendant here, which the finance commissioner publicly announced had been organized as a building and loan association. The petition at great length sets forth many circumstances concerning this new organization, the alleged building and loan association, and its connection with other corporations and financial concerns, the purport of which is that a real building and loan association never was organized or put in operation in good faith; that the funds of the Lincoln Housing Trust, which went into the hands of the finance commissioner, as receiver, and were transferred to the alleged building and loan association, were misspent and misappropriated; that on the four certificates held by plaintiff in the housing trust he had paid $2070, and had borrowed in one loan $403, and in another loan $873.60, and had pledged for each loan two of said certificates; that subtracting the amount of the two loans from the face value of the certificates so pledged there remained due him, for which he was entitled to certificates in the building and loan association under the plan worked out and approved by the finance commissioner, $317 and $521.40,

respectively; that defendant failed and refused to issue to him building and loan association certificates in lieu of his said housing trust certificates, although it had printed and circulated a form of certificate which it promised to issue to certificate holders in said housing trust; that plaintiff made due demand upon defendant for $521.40, being the aggregate amount of the withdrawal values on building and loan certificates to which he was entitled in exchange for three of his housing trust certificates (Nos. R. P. 45, 46, and 47, Series 1) under said plan; that defendant had offered to pay plaintiff $286.86 in settlement of his said claim for withdrawal values which plaintiff refused. It is charged throughout the petition that the finance commissioner was a party to the wrongs complained of, and that he aided and assisted in their commission, and it is alleged, among other things, that said finance commissioner has declared himself as in every way satisfied with the *status* and condition of defendant and the purpose and intention of its incorporators and directors, and that there is no reason for him to take any proceedings against defendant; that any demand upon said commissioner to act in protection of the interests of certificate holders would be futile; that said commissioner by reason of his conduct in relation to defendant has rendered himself disqualified to act for the benefit and protection of the certificate holders as receiver or otherwise; that any action taken by him would be only simulated and in accordance with the wishes of the directors of defendant; that since its inception said commissioner has not made any examination of the condition or affairs of defendant; that said commissioner has been temporarily suspended from office, and the conduct of his office is being investigated by the attorney-general of the State because of his misconduct in office; that a vacancy exists in said office; that by reason of such extraordinary condition and emergency, the usual functioning of said department of finance is impossible; that only the court in the exercise of equitable jurisdiction can be invoked in the protection of plaintiff's rights.

The prayer of the petition is substantially as follows:

"Inasmuch as plaintiff is without adequate remedy at law and can have relief only through the aid of this Honorable Court, plaintiff respectfully prays for equitable relief as follows:

"1. That this court decree that defendant credit plaintiff with a membership certificate for the sum of five hundred twenty-one dollars and forty cents ($521.40) and a membership certificate for the sum of three hundred seventeen dollars ($317).

"2. That this court decree that defendant shall duly note and accredit plaintiff as being entitled to withdrawal values, respectively, of five hundred twenty-one dollars and forty cents ($521.40) and three hundred seventeen dollars ($317).

"3. That this court decree that an accounting be had of the monthly receipts of defendant from the time of its inception to the time of a hearing upon the merits hereof for the purpose of ascertaining and determining to what extent, if any, withdrawal demands prior to those of plaintiff have been or should be paid, and what proportion, if any, of plaintiff's demand can and should be paid.

"4. That defendant be enjoined from taking any action to declare or enforce the forfeiture against plaintiff or any other member by reason of nonpayment of monthly payments up to the present time, and to such time as the legal *status* of defendant be determined and the rights of members as created by the representations of defendant as inducement to convert from the Lincoln Housing Trust into defendant company, be determined.

"5. That pending final decree this court decree that defendant be enjoined and restrained from using or applying any of its monthly receipts for the lending of any money or for any purpose other than payment of necessary operating expenses and of paying withdrawals in their regular order until such time as the withdrawal to which plaintiff is entitled shall have been paid in full. ·

"6. That for the purpose of preventing further loss and waste of assets, for preventing a multiplicity of suits and for the purpose of protecting the interests of creditors and all others claiming an interest in the property that a receiver be appointed. That said receiver be directed to take charge of the assets, to receive all moneys payable to defendant, to pay all proper obligations when due and payable so far as the funds may permit, and have such powers and authority as are usual in the premises; that said receiver be directed to speedily ascertain and report to the court the financial condition of defendant and *status* of its assets; that said receiver show in said report, among other things, what installments on mortgages are past due and payable to defendant; that the receiver shall proceed to collect all such installments; that said receiver proceed to take an accounting and report thereon, showing what moneys have been improperly spent; that the receiver, under direction of the court, shall marshal the assets and report the nature, amount and sequence of the rights and liens of respective creditors; that the receiver speedily ascertain and report what things, if any, may and should be done to correct any invalidity or defect in the plan and by-laws of defendant; that at any time it may be necessary or advisable that the consent of the certificate holders be had, that a special master (if necessary) be appointed, who shall speedily present the matter to be submitted to said certificate holders, obtain their approval and present to this court the result of such reference for the guidance of said receiver and this court; that if the defects and invalidities in the plan and by-laws be incurable, or if the interests of creditors and others would be better conserved by so doing, that said receiver be then directed

to apply to the State Commissioner of Finance, who may hereafter hold office, and other than said Millspaugh, or to the attorney-general of the State of Missouri, or in such manner as this court may direct to proceed to a speedy liquidation and distribution of the assets of defendant, Lincoln Savings and Loan Association.

"7. That plaintiff have such other and further relief in the premises as the nature and circumstances of this case require, and to this Honorable Court shall seem meet and just."

The ground on which defendant seeks to uphold the judgment below is that under our statute the finance commissioner has the exclusive right to institute proceedings of this character against a building and loan association.

Section 10229, Revised Statutes 1919, provides as follows:

"There is hereby created a bureau of building and loan supervision. The chief officer of said bureau shall be designated as the supervisor of building and loan associations."

Section 10234, Revised Statutes 1919, provides as follows:

"If it shall appear to the said supervisor from any report of any such association, whether heretofore or hereafter organized, or from any examination made by him, or by the person or persons appointed by him to make such examination, or from any knowledge or information in his possession, from whatever source obtained, that any such association has committed a violation of its charter or of law, or that said association is conducting its business in an unsafe and unauthorized manner, or that the assets of any such association are insufficient to justify the continuance of business by such association, he shall communicate the fact to the officers or directors of such association. Such officers or directors shall be allowed sixty days within which to make the assets sufficient or to correct any illegal practices; and in case such assets are not made sufficient or the illegal practices corrected within the time herein provided, or whenever it shall appear to the said supervisor that it is unsafe or inexpedient for any such association to continue to transact business, said supervisor shall take charge of its affairs and institute proceedings in the circuit court in the city or county in which such association has or had its principal office to enjoin or restrain such association from the further prosecution of its business, either temporarily or perpetually, or for such injunction and the dissolution of such association and the appointment of himself as receiver thereof for the purpose of settling and winding up of its affairs, or for any and all of said remedies, combined, as the supervisor may deem necessary."

Section 10235, Revised Statutes 1919, provides that upon taking charge of an association the supervisor shall, as soon as practicable, ascertain by a fair examination its actual financial condition, and if in his opinion the association is solvent and can be placed in condition

to resume business he shall proceed to conduct and manage its affairs, but if he shall become satisfied that the association is insolvent or cannot resume business, he shall immediately institute proceedings in the proper court to have himself appointed receiver of such association, and shall proceed to wind up its affairs and business for the benefit of its creditors and stockholders.

Section 10236, Revised Statutes 1919, provides that such proceedings shall be conducted by the attorney-general of the State and in the name of the State of Missouri as plaintiff, at the relation of the supervisor.

In 1921, the Legislature passed an act Laws 1921, p. 394, creating a State Department of Finance, and providing that the same shall be under the management and control of a chief officer to be called the Commissioner of Finance. Section 4 of that act provides as follows:

"The department of finance shall have charge of the execution of the laws relating to banks, private bankers, trust companies, and savings and safe deposit companies and the banking business of this State; . . . and of the laws relating to building and loan associations and co-operative companies organized and existing under and by virtue of the laws of this State; and of the administration of 'the soldier settlement act,' it being the purpose and intention of this act that the department of finance herein created shall have and exercise the jurisdiction heretofore possessed and exercised by the State Banking Department, the State Bank Commissioner, the bureau of building and loan supervision, the supervisor of building and loan associations, and the soldier settlement board. . . . The commissioner of finance shall have the power to institute in the name of the State of Missouri, and to defend suits in the courts of this State and the United States."

It is manifest that it was not the intention of the Legislature, in the enactment of this statute, to preclude a private individual from bringing an action such as this, under the facts and circumstances pleaded.

Defendant, in support of its view, places much reliance on Koch v. Missouri-Lincoln Trust Co. (Mo.), 181 S. W. 44. That case seems to hold that under a statute establishing a banking department to have charge of the execution of the laws relating to banks and trust companies, providing in detail for the supervision of such institutions and requiring the bank commissioner, on discovery of improper practices or insolvency, to proceed for the appointment of a receiver, this was intended as an exclusive system for winding up the affairs of insolvent banks and trust companies, so that stockholders of a trust company could not take proceedings for the appointment of a receiver to wind up its affairs. In the opinion in that case it is said that the power of a stockholder or creditor to institute proceedings to wind up the affairs of a trust company, in which many others be-

sides himself are interested, is only taken away by the statute, that all rights and remedies necessary to protect himself alone, by action, are left open to him, but that when public policy and the interests of all, as well as his, demand its death, the officer of the State alone can take its life, and administer its assets. The instant case is not, like that case, a suit for, or necessarily involving, defendant's dissolution. Nor does it appear in that case, as in the instant case, that the officer entitled to institute proceedings, was in collusion with the officers of the defendant, aiding and protecting them in the commission of the wrongs complained of.

Defendant also relies on Union Savings and Investment Co. v. District Court of Salt Lake County, 44 Utah, 397. That was a suit brought by a private individual for the dissolution of a building and loan association. The statute provided that such a suit should be brought by the attorney-general at the instance of the Secretary of State, upon a finding by him that the association was conducting its business illegally, or was in an unsafe condition. The court in argument in that case said:

"There is no allegation . . . that the provisions of our statutes have not been fully complied with, and hence counsel for plaintiff insist that we must indulge the presumption that both the officers of plaintiff and the Secretary of State have performed the duties imposed by statute. Such, in the absence of any allegation to the contrary, is no doubt the law. . . . The right to dissolve a corporation and wind up its affairs for any cause against its consent belongs to the sovereign State alone, and in the absence of an express statute to that effect the courts have no power to bring about that result at the instance of an individual suitor. . . . We are also of the opinion, and so hold, that where the purpose of the action is not to wind up the affairs, but is merely to prevent it from doing some forbidden act, or from continuing the mismanagement of its affairs, or to require it to follow the provisions of the statute and cognate matters, or for the purpose of obtaining a judgment against the association, and, in short, any offensive or prohibitive action which is not intended to destroy the existence of the association, such action may be brought by any shareholder at any time in any court of competent jurisdiction."

Obviously that case does not support the defendant's position in the present case.

We are of the opinion that our statute, properly construed, does not vest in the finance commissioner the sole and exclusive power to bring a suit such as this; and this view, as said by our Supreme Court, in transferring this case to this court, is "supported by the authorities."

The Commissioner recommends that the judgment of the circuit court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Becker* and *Nipper, JJ.,* concur; *Haid, P. J.,* not sitting.

## ON MOTION FOR REHEARING.

SUTTON, C.—To the end of showing that we have erred in construing the statute involved in this case, the defendant, on motion for rehearing, has reargued with much earnestness the propositions presented in its original brief. We are not convinced, however, that our Legislature intended, in the enactment of this statute, to vest in a mere ministerial officer, or appointee, having no judicial powers, and to whom judicial powers may not be lawfully granted or delegated, the power to preclude a private citizen from resorting to the courts for the protection of his private property rights, or to seek a remedy for his private wrongs. As to the merits of the individual case before us, as the merits may be made to appear upon a proper hearing before the chancellor, we know nothing, and say nothing. But we do say there is a principle involved of the gravest import, affecting the right of the citizen to have his day in court. It may be conceded that the right to move to dissolve a building and loan association or to forfeit its charter belongs exclusively to the sovereign, but this does not mean that a mere ministerial officer, or appointee, has the power to close the doors of the courts to a citizen seeking redress of his private wrongs, or the protection of his private property rights. Surely, such an officer, shown to be in fraudulent league with the officers of the loan association whose wrongs are complained of, has not such power. We do not think the statute was enacted for the protection of building and loan associations, but was enacted for the protection of the citizen against the wrongful conduct of such associations. But, if the statute was enacted for the protection of such associations, surely an association, whose officers have entered into a fraudulent arrangement with the Finance Commissioner for the purpose of shielding such association from being molested by the courts in its wrongful conduct of its affairs, is not entitled to such protection. The association cannot take shelter under the statute, when it has entered into collusion with the finance commissioner to enable it to violate the statute with impunity, and thus shield itself from the consequences of the very wrongs the statute was enacted to prevent. This view is amply supported by the authorities. [Richmond v. Irons, 121 U. S. 27; Grout v. First National Bank, 48 Colo. 557; King v. Pomeroy, 121 Fed. 287; Wallach v. Billings, 161 Ill. App. 317; Wallach v. Billings, 244 U. S. 659; Irons v. Manufacturers' National Bank, Fed Cas. 7068; Cogswell v. Second National Bank, 76 Conn. 252; The Merchants' and Planters'

National Bank v. The Trustees of Masonic Hall, 63 Ga. 549; Watkins v. National Bank, 51 Kan. 254; Elwood v. Greenleaf First National Bank, 41 Kan. 475; Koch v. Missouri-Lincoln Trust Co. (Mo.), 181 S. W. 44; Union Savings and Investment Co. v. District Court of Salt Lake County, 44 Utah, 397; Kroeger v. Garkie (Mo. App.), 274 S. W. 478; White v. Poole (Mo. App.), 272 S. W. 1021; Maloney v. Real Estate, Building and Loan Assn., 57 Mo. App. 384; United States Building and Loan Assn. v. Silverman, 85 Pa. St. 394; State v. Flitcraft (Mo.), 36 S. W. 675; Dill v. Supreme Lodge, Knights of Honor, 226 Fed. 807; Pritchard v. Norton, 106 U. S. 124; Baltimore & Ohio Southwestern R. Co. v. Reed, 158 Ind. 25; West v. Jaloff, 113 Ore. 184.] Many other authorities might be cited, but these ought to suffice.

It may be refreshing to call attention, at this time, to certain pertinent constitutional provisions.

Section 10 of Article 2 of our Constitution provides as follows: "The courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and right and justice shall be administered without sale, denial or delay."

Section 30 provides that, "No person shall be deprived of life, liberty, or property, without due process of law."

Section 1 of the Fourteenth Amendment provides that, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The same principle is embodied in the Magna Carta, extorted from King John at Runnymede centuries ago, as follows: "To no one will we sell, to no one will we refuse or delay, right or justice."

The statute should be so construed, if so it may be, that it will not be invalidated for running counter to constitutional guaranties.

Defendant says that all the cases that have dealt with statutes similar to ours have held that the right and duty to bring suits such as this are exclusive in the State official. Yet, not a single case has been brought to our attention wherein a State official was permitted to preclude a private suitor from resorting to the courts under facts and circumstances such as are alleged in the petition in this case.

Defendant further argues that our statute was intended to close the floodgates to suits of private individuals against *quasi*-public institutions, such as banks, insurance companies, and building and loan associations, and that the opinion in this case opens wide these floodgates, so that the very existence of such institutions will be thus imperiled. This is a strange doctrine. Cannot the courts, in the

exercise of their judicial powers, be trusted to protect these institutions against ill-advised suits, so that a mere ministerial officer, or appointee, must be clothed with power to oust the courts of their jurisdiction, and to preclude private suitors from resorting to the courts for the redress of their private wrongs, or the protection of their private property rights, and that, too, without even so much as the poor privilege of a hearing before such officer?

Defendant further insists that plaintiff, instead of bringing this suit, ought to have brought a mandamus suit to compel the Commissioner of Finance to act in the premises, if he refused to act, and that redress could have been promptly had by such mandamus suit. We are not aware of any principle of law or justice that would require a private suitor to commit the prosecution of his suit to an official who is not only unwilling to prosecute the suit, but who is moreover in collusion with the party whose wrongs are complained of.

We are not impressed by the suggestion of defendant that, under our opinion, the statute may be emasculated or set at naught by the simple process of making allegations on paper such as are made in the petition in this case. Courts do not ordinarily act on mere allegations, but they require allegations to be proved.

Defendant seems to have conceived the notion that the character of the petition must be determined by the prayer for relief, and that all the relief prayed for, or none, must be granted. Of course, this is not the rule. If the allegations justify any of the relief prayed for, the petition is not demurrable.

The Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The motion for rehearing is accordingly overruled. *Becker* and *Nipper, JJ.*, concur; *Haid, P. J.*, not sitting.

