## STATE v. ROBINSON et al.
### No. 11033.

Court of Civil Appeals of Texas. Dallas.
July 3, 1931.

Rehearing Denied Oct. 10, 1931.

Jas. V. Allred, Atty. Gen., and Grady Sturgeon and Everett L. Looney, Asst. Attys. Gen., for the State.

D. A. Frank, Crate Dalton, and E. G. Senter, all of Dallas, for appellee.

LOONEY, J.

W. E. Robinson, J. E. Hambrick, and Sherwood H. Avery, underwriters of Bankers' Lloyds of Dallas, and Johnnie Johnson and Dr. John F. Ford, creditors, brought this suit for the appointment of a receiver to wind up the affairs of the association. Bankers' Lloyds, Stephen Reele, attorney in fact, Guardian Securities Corporation, holder of certain powers of attorney, and John Touchstone, custodian, were made defendants. The suit was brought for the benefit of all other creditors and underwriters who desired to join in the proceedings. Plaintiffs alleged that the association was in an insolvent condition; that its affairs were being mismanaged and its assets squandered and dissipated, and as the result thereof, they were threatened with irreparable loss of property. The petition concluded with a prayer for the appointment of a receiver to wind up the affairs of the association under orders of the court. The prayer was granted, and Charles W. A'Brams was appointed receiver on March 4, 1931; he immediately qualified and became active in the discharge of the duties of the position. At this juncture, the state of Texas, through the Attorney General, was granted leave to intervene for the purpose of moving the court to vacate the receivership and dismiss the receivership proceedings. On March 31, 1931, after a hearing, the court overruled the motion to vacate and the State appealed.

The material question for decision is presented in the brief for the state as follows: "The remedy given by Article 5022, R. C. S., as amended by Acts 1929, 41st Leg., 1st Called

Sess. p. 32, c. 11, § 1 which provides that when the minimum assets of underwriters at Lloyds becomes impaired the Board of Insurance Commissioners shall immediately give to the attorney-in-fact for such Lloyds notice to make good the impairment, and if within thirty days from the giving of such notice the impairment or insolvency shall not be made good by such underwriters, or their attorney, then the Board shall take charge of the assets of such underwriters and effect a reinsurance of all business outstanding in Texas and make provision for payment of outstanding claims and losses, and, in case reinsurance cannot be effected by said Board, then the affairs of such underwriters at Lloyds shall be wound up through receivership proceedings instituted by the Attorney General at the request of the Board, is exclusive, and the court cannot appoint a receiver to wind up the affairs of the association on the petition of three stockholders and two creditors."

As an approach to our subject it may, we believe, be correctly said that the business of insurance, however conducted, is quasi public in nature, and subject to regulation and control by the state (14 R. C. L. 857 and authorities), and this doctrine is equally applicable to insurance conducted under the Lloyds plan (38 C. J. 160 § 12, and authorities cited). The policy in this state with reference to the dissolution and winding up of the affairs of its legal entities, as manifested by acts of the Legislature, is that the right to bring about such results belongs exclusively to the state, and that courts, unless authorized by statute, have no power to dissolve or wind up their affairs at the instance of individuals. See provisions for quo warranto proceedings, articles 6253 to 6258, R. C. S.; also provisions for the dissolution and winding up of the affairs of insolvent corporations, articles 1379 to 1386, R. C. S.; and especially the provision for winding up the affairs of insurance corporations, article 4691, subd. 5, R. C. S., as follows: "* * * No action shall be brought or maintained by any person other than the Commissioner for closing up the affairs or to enjoin, restrain or interfere with the prosecution of the business of any such insurance company organized under the laws of this State." Also see special provisions for the dissolution of local mutual aid associations at the suit of the Attorney General (Vernon's Ann. Civ. St. Art. 4875a—27, Acts 41st Leg., p. 563, c. 274, § 27).

The exceptions contained in article 1383 giving stockholders owning 25 per cent. of the stock and creditors owning 25 per cent. of the indebtedness the right to institute proceedings for the dissolution of an insolvent corporation show that the cases excepted would otherwise be within the general words of the statute, and, in effect, is an affirmation of the application of the general rule to all other cases.

The wisdom underlying legisaltion protecting corporations generally and associations conducting insurance from winding up proceedings at the suit of individual creditors or stockholders would certainly justify provisions similarly protecting the affairs of a Lloyds insurance association, for it is evident that a receivership would practically end its business activities, discredit it as a business concern in the estimation of the public, effectually prevent or at least discourage efforts of underwriters to make good an impairment or insolvency, outstanding risks if not reinsured, would be canceled to the detriment of policyholders, securities held in the guaranty fund would at once be put in the melting pot for liquidation, at probable sacrifice, and, if the exigency demands, individual underwriters would be called upon at once to pay their notes held in the reserve. These are doubtless some of the results the Legislature sought to avoid by the provision that insurance at Lloyds should be under the supervision of, and subject to visitation by, the board of insurance commissioners; that the attorney in fact should make annual reports, under oath, as to the status of affairs, and, when it appears that the guaranty fund is impaired, or insolvency exists, the board, to avoid a collapse, is required to put forth special efforts to have the impairment or insolvency made good, failing in this, it becomes its duty to take charge of the assets, etc., and, if possible, effect reinsurance of outstanding risks, but, if this cannot be accomplished, as a last resort, the statute provides that the affairs of the association shall be wound up by a receivership proceeding brought by the Attorney General, at the request of the board.

The question presented seems to be one of first impression in this state, although in other jurisdictions the doctrine is well established that the right to dissolve and wind up affairs of corporations for any cause, without its consent, belongs exclusively to the state, and that courts are without the power to bring about these results in proceedings brought by individual creditors or stockholders. One of the early cases is Ulmer v. Falmouth Loan & Building Ass'n, decided by the Supreme Court of Maine, reported in 93 Me. 302, 45 A. 32, 34. The question arose under a statutory arrangement similar to provisions in the Lloyds plan under consideration. Construing the statute, and giving reasons for the construction, the court said: "The statute points out the conditions under which the intervention of the court may be obtained, and the officer by whom the machinery of litigation may be set in motion. It suggests no other way. And it is the opinion of the court that it was the intention of the legislature, as expressed in the statute, that the power of invoking the interference of the court should be vested in the bank examiner alone, and that he only may pray for an injunction and a receiver.

It is to be observed that these institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be. Unusual means are placed in the hands of the bank examiner to ascertain their condition, and it cannot be presumed that he will fail to act in a proper case. If one shareholder may maintain a bill, so may every other. There is no limit. To subject loan and building associations to vexatious, harassing and expensive litigation caused by the suits of possibly multitudinous shareholders who may be dissatisfied, with or without reason, would greatly impair their usefulness, if not imperil their existence."

To the same effect see Craughwell v. Mousam River Trust Co., 113 Me. 531, 95 A. 221; Dresser v. Hartford Life Ins. Co., 80 Conn. 681, 70 A. 39, 50; Koch v. Missouri-Lincoln Trust Co. (Mo. Sup.) 181 S. W. 44; Union, etc., Co. v. District Court, 44 Utah, 397, 140 P. 221, 225, Ann. Cas. 1917A, 821. From the latter case we quote the following pertinent passages; the court said: "The question we must decide is whether every dissatisfied shareholder may go into a court at any time and ask that court to wind up the affairs of a building and loan association so that he may at once, or as soon as the business affairs of the association can be wound up, obtain the withdrawal value of his shares, and in so doing arrest and frustrate the entire scheme and purpose of the association and, as we have seen, dissolve all of the existing contractual relations between the association and its members except for the purpose of liquidation, without giving the association the opportunity contemplated by the statute to correct any evils or wrongs that may exist in managing its affairs. If this may be done, then any shareholder may jeopardize the welfare of the association and its members at any time and without adequate cause. * * * The only purpose of the statute is to prevent hasty and ill-considered action in the courts by a party without giving the association any opportunity whatever to first correct any wrongs that may exist in its management or business affairs, and which, if corrected, may be for the best interests of a great majority of the shareholders without injury or prejudice to any."

Appellees contend, however, that under the circumstances they were threatened with an irreparable loss of property, hence were not required to await or depend upon action by the state through its public officials, but were privileged to enter court in search of an appropriate remedy for their protection, and that to take the view of the Attorney General and deny them this right would, in effect, violate the provision of section 13, art. 1, of the Constitution, guaranteeing that: "All courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." This provision of the Constitution is but declaratory of a pre-existing common-law right, and the effect of the constitutional provision is to forbid the Legislature to in any way curtail or impair that right, but it did not change the rule with respect to the sovereign right of the state to control legal entities created by it, and in this respect the state's right may not be interfered with by the courts at the instance of private suitors. However, this doctrine does not mean that creditors and underwriters are without remedy for an injury suffered or threatened. Where the purpose of the action is not to wind up the affairs of the association, but to prevent the doing of some forbidden act, or to require obedience to the provisions of a statute, or to obtain a judgment against the association—in fact, any proceeding which is not intended to destroy the existence of the association may be maintained, under facts that justify the action, by any underwriter or creditor. In Union, etc., Co. v. District Court, 44 Utah, 397, 140 P. 221, 226, Ann. Cas. 1917A, 821, the court disposed of a similar contention as follows: "We are also of the opinion, and so hold, that where the purpose of the action is not to wind up the affairs, but is merely to prevent it from doing some forbidden act, or from continuing the mismanagement of its affairs, or to require it to follow the provisions of the statute and cognate matters, or for the purpose of obtaining a judgment against the association, and, in short, any offensive or prohibitive action which is not intended to destroy the existence of the association, such action may be brought by any shareholder at any time in any court of competent jurisdiction. Where, however, as here, the manifest purpose, and the only possible result, of the action is to wind up all of the business affairs of the association, and the effect is necessarily to dissolve its corporate existence, the action should be commenced by the Attorney General as pointed out in the statute."

It is not to be presumed that the Legislature, contrary to its general policy in regard to the dissolution and winding up of the affairs of entities created by it, as shown in the different statutes hereinbefore referred to, intended to subject insurance business conducted under the Lloyds plan to receiverships and winding up proceedings at the suit of any creditor or dissatisfied underwriter; therefore we hold that the procedure prescribed by article 5022 is exclusive, and that the court erred in overruling the contention of the state, hence the order appointing the receiver is set aside, and the proceedings for receivership are dismissed. The cause, however, is remanded, with instructions to the court below to require the receiver heretofore appointed to make a full report of his doings as such, to

close the receivership, and order that delivery of all assets of Bankers' Lloyds in the custody of said receiver be made to the person, persons, or official legally entitled to receive delivery of same.

Reversed and rendered on the main contention, and remanded, with instructions.